**Dennis LUTHER, Respondent-Appellant,**

v.

**Vincent MOLINA, Petitioner-Appellee.**

**No. 80–1436.**

United States Court of Appeals,
Seventh Circuit.

Argued June 13, 1980.
Decided Aug. 6, 1980.

---

Patty Merkanp Stemler, Washington, D. C., for respondent-appellant.

Arthur H. Grant, Arthur H. Grant, Ltd., Chicago, for petitioner-appellee.

Before FAIRCHILD, Chief Circuit Judge, WOOD, Circuit Judge, and LARSON, Senior District Judge.*

LARSON, Senior District Judge.

## I.

On November 19, 1975, Vincent Molina pled guilty to distribution of heroin. He was given a five year prison term and a three year special parole term. After serving three years of his sentence, Molina was paroled on December 13, 1978. One condition of his release was that he attend a drug treatment program. He failed to follow this requirement and was placed in a halfway house in the fall of 1979. He did not attend therapy sessions at the halfway house and was found to be in violation of the house rules on December 18, 1979. On this same day, Molina's parole officer informed him that a parole revocation hearing had been requested. On December 20 Molina left the halfway house and did not return. He had discussions with the parole authorities about surrendering, but he did not do so. A warrant was issued for Molina to be retaken and he was arrested and imprisoned on March 10, 1980, for violating the conditions of his parole. Molina had a preliminary interview with a parole officer on March 19, 1980. This hearing resulted in a finding of probable cause on one charge of violating parole conditions. Molina's final parole revocation hearing was held on May 1, 1980. On May 27, 1980, the Parole Commission found that a parole violation had occurred, but returned Molina to the supervision of his parole officer.

On March 17, 1980, after he had been imprisoned, Mr. Molina filed a petition for a writ of habeas corpus in federal district court. In the petition he alleged that: (1) he had not violated his parole conditions; (2) his parole officer had made misrepresentations to make it appear that Molina had violated his parole conditions; (3) his parole officer continually harassed Molina; and (4) Molina had not been given enough time to appeal the decision to commit him to the halfway house. On March 20, 1980, the district court held a hearing on the petition. Although the district court stated that it would not consider the merits of Molina's parole revocation, it did find that it had jurisdiction under the habeas statute to entertain a request for bail by an arrested parolee. The district court then ordered Molina released on a personal recognizance bond.

It is important to note that Molina sought no change in the revocation procedures, nor did his petition raise any constitutional or statutory objections to those procedures. The government appealed the grant of bail, asserting that the district court lacked the power to order bail for a parolee who is incarcerated pending revocation; or that even if the district court did have such power, it was improperly exercised here.

█ Two potential jurisdictional problems are presented. The first is whether such a bail order is final and therefore appealable. See 28 U.S.C. §§ 1291, 2253; Stachulak v. Coughlin, 520 F.2d 931, 933 (7th Cir. 1975), cert. denied, 424 U.S. 947, 96 S.Ct. 1419, 47 L.Ed.2d 354 (1976). Mr. Molina was claiming only the right to be released during the pendency of revocation proceedings. He was awarded the relief he sought. Neither he nor the district court contemplated any further action on the petition. Under these circumstances there was a final order in the habeas corpus proceeding and this Court has jurisdiction to consider the appeal.[1]

█ The second and more perplexing jurisdictional problem is that of mootness. The Parole Commission argues that even if the issue presented here is moot as to Molina, it is "capable of repetition, yet evading

---

* The Honorable Earl R. Larson, United States Senior District Judge for the District of Minnesota, sitting by designation.

1. It is also possible that a bail order might fall within the collateral order exception to the finality rule. See Abney v. United States, 431 U.S. 651, 658, 97 S.Ct. 2034, 2039, 52 L.Ed.2d 651 (1977); Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951).

review," and therefore can be decided, although technically moot. *See Securities & Exchange Commission v. Sloan*, 436 U.S. 103, 109, 98 S.Ct. 1702, 1707, 56 L.Ed.2d 148 (1978). To come within this rule the challenged action must be too short in duration to be fully litigated prior to its cessation and there must be an expectation that the complaining party will again be subjected to the protested action. *Board of Trade v. Commodity Futures Trading Commission*, 605 F.2d 1016, 1020 (7th Cir. 1979), *cert. denied*, —— U.S. ——, 100 S.Ct. 1866, 64 L.Ed.2d 281 (1980).

■ Mr. Molina's revocation proceedings are over, and it appears very likely that in most cases the revocation process will have run its course before full review of a bail order, including a possible appeal to the Supreme Court, could be obtained. Typically, then, bail orders will be too short in duration to be fully litigated before they expire. The second requirement is clearly met here. The Parole Commission states that it is repeatedly presented with this problem. It can reasonably be expected that parolees will continue to seek bail from the courts if they believe it will be granted even when the Commission refuses to release them before a revocation hearing.[2]

II.

*Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), held that the due process clauses of the United States Constitution require that certain minimum procedures be followed when parole is revoked. *See also Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). In 1976, Congress, through the Parole Commission and Reorganization Act, 18 U.S.C. §§ 4201, *et seq.*, revamped the parole system for federal prisoners. 18 U.S.C. §§ 4213–15 contain provisions relating to parole revocation. The United States Parole Commission has also issued regulations regarding revocation proceedings. *See* 28 C.F.R. §§ 2.44, *et seq.*

If a parolee is alleged to have violated his parole the Commission under § 4213 may either summon the parolee to a § 4214 revocation hearing or issue a warrant and retake the parolee. *See* 28 C.F.R. § 2.44. Of course, the question of release arises only when the Commission elects to retake and incarcerate the parolee. *See* 28 C.F.R. § 2.49(d). Section 4214(a)(1)(A) provides that the parolee is entitled to a "preliminary hearing . . . without unnecessary delay,[3] to determine if there is proba-

---

**2.** *Cf. Marchand v. Director*, 421 F.2d 331, 334 (1st Cir. 1970). There the parolee was the "complaining party." He had been unconditionally released and the court found that the possibility of his again being affected by the issue was too speculative to warrant application of this exception to the mootness doctrine.

**3.** The problem of how to interpret the language "without unnecessary delay" may be crucial to the legality of a parolee's detention. *Morrissey v. Brewer* required that the preliminary hearing take place "as promptly as convenient." 408 U.S. at 485, 92 S.Ct. at 2602. Chief Justice Burger, the author of the *Morrissey* opinion, undoubtedly borrowed this language from *Hyser v. Reed*, 318 F.2d 225, 243 (D.C.Cir.1963), which he also wrote. As explicated by the suggested amendments to the then Parole Board's regulations, *id.* at 245, Chief Justice Burger seemed to be contemplating an almost immediate hearing; one which would occur even before the parolee was transported to federal prison.

The legislative history of the parole statute suggests that Congress was greatly concerned about the implications of incarcerating a parol-

ee during the revocation process. The bill originally proposed by the House called for a preliminary hearing "as soon as possible" and did not envision reincarceration until after probable cause had been found. *See* 121 Cong.Rec. 15706, 15713; H.R.Rep.No. 184, 94th Cong., 1st Sess. (1975). The Senate substitute allowed immediate imprisonment, and is the source of the "without unnecessary delay" language. *See* S.Rep.No. 369, 94th Cong., 1st Sess. (1975), U.S.Code Cong. & Admin.News 1976, p. 335. Even though the Senate bill allowed detention before probable cause was found, the Senate Report recognized that:

"Because a new period of incarceration, even if only 24 hours in length, may cost a parolee his employment, and further jeopardize his chances for rehabilitation, the detention of an alleged violator is a serious matter and must be dealt with in a manner which clearly recognizes the degree of loss to be suffered." *Id.* at 18, U.S.Code Cong. & Admin.News 1976, p. 339.

The sectional analysis of the bill comments that:

ble cause to believe that he has violated a condition of his parole." The parolee is informed at the end of the hearing whether probable cause is believed to exist. 28 C.F.R. § 2.48(d). If probable cause is found, § 4214(a)(1)(A)(i–iv) states that the Commission:

"may restore any parolee to parole supervision if:

(i) continuation of revocation proceedings is not warranted; or

(ii) incarceration of the parolee pending further revocation proceedings is not warranted by the alleged frequency or seriousness of such violation or violations;

(iii) the parolee is not likely to fail to appear for further proceedings; and

(iv) the parolee does not constitute a danger to himself or others." [4]

■ It is apparent that Congress intended to give the Parole Commission great latitude in making decisions relative to revocation. In fact, 18 U.S.C. § 4218(d) states that:

"Actions of the Commission pursuant to paragraphs (1), (2), and (3) of section 4203(b) shall be considered actions committed to agency discretion for purposes

of section 701(a)(2) of title 5, United States Code."

Section 4203(b)(3) provides that:

"The Commission, by majority vote, and pursuant to the procedures set out in this chapter, shall have the power to—

\* \* \* \* \* \* \*

(3) modify or revoke an order paroling any eligible prisoner."

Chapter 7 of title 5 of the United States Code governs judicial review under the Administrative Procedure Act. 5 U.S.C. § 701(a)(2) states that "This chapter applies . . . except to the extent that—. . . (2) agency action is committed to agency discretion by law." The effect of § 4218(d) is therefore to insulate all Commission decisions relating to parole revocation from judicial review under the APA. This includes the Commission's decision to retain a retaken parolee in prison pending final action on revocation of his parole.

■ The exclusion of judicial review under the APA does not completely eliminate the possibility of habeas corpus relief,[5] but it does indicate that courts must grant

---

"The timing of the preliminary hearing is particularly crucial; even if probable cause is not found, if a parolee is held in jail awaiting his hearing for more than one or two days, his job will probably be lost and his reintegration efforts badly disrupted." *Id.* at 25–26, U.S.Code Cong. & Admin.News 1976, p. 347.

It appears that the Senate contemplated a hearing within a very short time after detention. The Senate language was adopted in the final bill worked out in conference and the conference report states that the intent of the conferees was that "the Commission should minimize the disruption of the parolee's life in any revocation proceeding." H.R.Conf.Rep.No. 838, 94th Cong., 2d Sess. 33 (1976), U.S.Code Cong. & Admin.News 1976, p. 365.

It is possible that a ten day delay between detention and the preliminary hearing does not meet either constitutional or statutory requirements. Of course, delay may be caused by conditions beyond the Commission's control, such as a request by the parolee for counsel at the hearing.

4. 28 C.F.R. § 2.48(e) contains substantially the same language, but in addition § 2.49(d) provides that:

"A parolee retaken on a warrant issued by the Commission shall be retained in custody until final action relative to revocation of his release, unless otherwise ordered by the Regional Commissioner under § 2.48(e)(2)."

Hopefully this regulation is not an indication of a Commission presumption or policy against release. Such a policy might not accord with Congressional intent. *See* n.3, *supra*, at pp. 74, 75.

Parole Commission regulations state that if no probable cause is found at the preliminary hearing, the Regional Commissioner will review this finding as expeditiously as possible and a decision to release the parolee shall be implemented without delay. 28 C.F.R. § 2.48(d)(1). Therefore, if the probable cause hearing is held very quickly the parolee would suffer only brief detention if there is no merit to the parole violation charges.

5. *See* 122 Cong.Rec. 5164 (remarks of Rep. Drinan). Congress several times indicated that it intended to codify existing limits on judicial review of actions relating to parole.

such relief only in extremely limited circumstances. Although the writ of habeas corpus is available to any person in federal custody, 28 U.S.C. § 2241(c)(1), the purpose of the writ is to provide a means to secure release from *illegal* detention. *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S.Ct. 1827, 1833, 36 L.Ed.2d 439 (1973); *Johnson v. Avery*, 393 U.S. 483, 485, 89 S.Ct. 747, 748, 21 L.Ed.2d 718 (1969). Imprisonment of parolees pending revocation is committed to the Parole Commission's discretion; therefore generally this incarceration must be regarded as legal.

■ Even action committed to agency discretion, however, may be challenged because it contravenes applicable constitutional, statutory or regulatory provisions. *Board of Trade v. Commodity Futures Trading Commission, supra*, at 1021 n.6; *Coppenbarger v. Federal Aviation Administration*, 558 F.2d 836, 838 (7th Cir. 1977). This rule applies to the Parole Commission as it would to any other agency. *Tedder v. United States Board of Parole*, 527 F.2d 593, 594 n.1; *Briney v. United States Parole Commission*, 434 F.Supp. 586, 589 (M.D.Fla. 1977).

■ There are two situations in which a parolee detained during revocation proceedings might properly be granted habeas corpus relief, including bail. The first is when the petition alleges, and the court finds, that the incarceration itself does not comport with constitutional or statutory requirements. An example would be a claim that it would violate equal protection to deny bail to parolees awaiting revocation while making it available to probationers.[6] Another example would be a showing that the Commission is not exercising its discretion at all; that its action in denying release is so arbitrary that due process rights are violated.[7] A final example would be an allegation that the preliminary hearing was not conducted quickly enough to adhere to the constitutional or statutory requirements.[8] If the district court found such claims to be valid, bail might be one form of relief which could be awarded. It would seem, however, that the preferable type of relief would be to order the Commission to correct the constitutional or statutory deficiency in its functioning.[9] Release, whether outright or on bail, would rarely be necessary or appropriate.[10]

The second situation where habeas relief could be awarded is when some other aspect of the revocation procedure is attacked as unconstitutional or contrary to statute or regulation. Here, too, it is conceivable that in very extreme circumstances release might be necessary to fully effectuate the habeas remedy.[11]

---

**6.** *See, e. g., United States ex rel. Taylor v. Brierton*, 458 F.Supp. 1171, 1174 (N.D.Ill.1978). *But see, e. g., United States ex rel. Derecynski v. Longo*, 368 F.Supp. 682, 688 (N.D.Ill.1973), *aff'd mem.*, 506 F.2d 1403 (7th Cir. 1974).

This listing of possible claims is not intended to be exhaustive, nor is any comment on the merits of any example intended. Courts should beware of frivolous and repetitively litigated claims used solely in an attempt to gain bail. After *Morrissey* and the revision of the parole statute it is unlikely that many legitimate claims about the parole revocation process exist.

**7.** *See, e. g., United States ex rel. Napoli v. New York*, 379 F.Supp. 603, 606 (E.D.N.Y.1974).

**8.** *See* n.3, *supra*, at pp. 74, 75.

**9.** *See* 122 Cong.Rec. 5163 (remarks of Rep. Kastenmeier) (if Commission fails to meet deadlines, remedy would be to seek mandamus under 28 U.S.C. § 1361); *Smith v. United States*, 577 F.2d 1025, 1028 (5th Cir. 1978).

**10.** A parolee has no constitutional right to release or bail before a revocation hearing. *Galante v. Warden*, 573 F.2d 707, 708 (2d Cir. 1977); *United States ex rel. Vitoratos v. Campbell*, 410 F.Supp. 1208, 1211 (N.D.Ohio 1976); *Burgess v. Roth*, 387 F.Supp. 1155, 1162 (E.D. Pa.1975). *See In re Whitney*, 421 F.2d 337, 338 (1st Cir. 1970).

**11.** Courts have traditionally recognized an *ancillary* power to order bail in any petition for a writ of habeas corpus. *Woodcock v. Donnelly*, 470 F.2d 93, 94 (1st Cir. 1972); *Baker v. Sard*, 420 F.2d 1342, 1343 (D.C.Cir.1969). The standard for exercise of this power, however, is also very narrow. *See Ostrer v. United States*, 584 F.2d 594, 596 n.1 (2d Cir. 1978); *Baker v. Sard, supra; see also Calley v. Calloway*, 496 F.2d 701, 702 and n.1 (5th Cir. 1974); *Pihakis v. Thomas*, 470 F.Supp. 721, 722 (S.D.N.Y.1979).

Any time a court considers granting bail to a parolee who is detained pending a revocation hearing, it is potentially usurping authority Congress has delegated to the Commission. Before a district court orders bail, a proper respect for the system Congress has established requires that the parolee show that he has requested release from the Parole Commission and has been denied. In addition, bail should not be allowed unless at a minimum the requirements of § 4214(a)(1)(A)(i–iv) are met.

The rule set forth in this opinion will severely restrict the power of the district courts to grant bail to parolees held during revocation proceedings. This standard, however, gives recognition to Congress' desire to allow the Parole Commission wide discretion in these matters, while at the same time providing the possibility of relief to those parolees who may truly be "illegally" detained.

REVERSED.