William Douglas DAVIDSON,
Petitioner,

v.

UNITED STATES of America,
Respondent.

No. H 84-53.

United States District Court,
N.D. Indiana,
Hammond Division.

Dec. 6, 1984.

William Douglas Davidson, pro se.

R. Lawrence Steele, Jr., U.S. Atty's Office, Hammond, Ind., for respondent.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This case is before this court on petitioner's motion under 28 U.S.C. § 2255, to vacate, set aside, or correct sentence by a person in federal prison filed on January 25, 1984. This court ordered the United States Attorney for the Northern District of Indiana to respond to said petition within sixty (60) days of February 14, 1984. There has been no response filed by the United States Attorney's Office. This court will proceed to rule on this case with the record provided by the petitioner.

Petitioner challenges the computation of time by the Parole Commission concerning his parole revocation. Petitioner never fully alleges a violation of the Parole revocation hearing, nor does he contest the revocation. However, since petitioner does allege that he was innocent of the parole violations, this court will address the validity of the parole revocation hearing.

Petitioner was originally sentenced to serve a fifteen (15) year sentence for conspiracy to distribute heroin and cocaine. Said sentence was to begin on April 25, 1975. Petitioner's early release date was originally computed to be on May 26, 1984 with a full release date of May 26, 1989. Petitioner was released on parole on November 6, 1980. Petitioner was subsequently arrested in Indiana on January 2, 1983 for state law violations and a federal parole violator warrant was issued on Janu-

ary 5, 1983. The warrant was executed on January 10, 1983 and petitioner was taken into custody. He was provided a copy on January 20, 1983.

The incident giving rise to petitioner's violator warrant issuance was his arrest in Lake County, Indiana for which a probable cause affidavit stated that petitioner was found by police in a parked vehicle with emergency flashers on and engine running. The subject was slumped over the steering wheel and he appeared to be intoxicated.

The Parole Commission held a revocation hearing on April 19, 1984 wherein it was determined that there existed a preponderance of the evidence that petitioner was guilty of (1) possession of a sawed-off shotgun, (2) unauthorized possession of a firearm, and (3) unauthorized use of narcotics/dangerous drugs. A written report explaining the findings was provided to petitioner. The Parole Commission ordered his parole revoked, all time spent on parole shall be credited and continue to a Presumptive Reparole after service of 72 months, January 2, 1989, or continue to expiration, whichever comes first with special drug aftercare condition. The report of the Parole Commission shows that the petitioner was given his procedural rights. Petitioner does not contest this fact. The petitioner appealed the decision which was affirmed by the National Appeals Board several times.

The standard to be applied by this court in reviewing a parole commission revocation hearing has been set forth in *Hanahan v. Luther*, 693 F.2d 629 (7th Cir. 1982), wherein the Court of Appeals for the Seventh Circuit held:

> As we said in *Luther v. Molina*, 627 F.2d 71 (7th Cir.1980) "[i]t is apparent that Congress intended to give the Parole Commission great latitude in making decisions relative to [parole] revocation." *Id.* at 75. Although this wide discretion does not eliminate the possibility of habeas corpus relief, it does mean that district courts should grant such relief only in limited circumstances. *Id.* at 75–76. Thus, when a district court reviews a

decision of the Parole Commission on a habeas corpus petition, "[t]he inquiry is not whether the Board is supported by the preponderance of the evidence, or even by substantial evidence, the inquiry is only whether there is a rational basis in the record for the Board's conclusions embodied in its statement of reasons." *Zannino v. Arnold*, 531 F.2d 687, 691 (3d Cir.1976). *See DeFillo v. Fitzpatrick*, 378 F.2d 85, 87 (2d Cir.1967). This court finds that the Parole Commission had a rational basis to revoke petitioner's parole.

In regard to the crux of petitioner's claim, that being, the Parole Commission computation of his time to be served, which petitioner refers to as a resentencing of his crime, this court finds the Parole Commission's computation to be correct.

The petitioner claims that the Parole Commission stopped his court sentence at 9½ years when they paroled him and now have resentenced him to an additional 5½ years. The petitioner has failed to understand the role of the Parole Commission and his obligations under the terms of his parole. Petitioner violated his parole terms and was reincarcerated on the remaining time to be served for the original court sentencing of fifteen (15) years. The Parole Commission merely refigured the mandatory release date and the reparole date. The Parole Commission calculated the time petitioner spent on parole and credited him with said time. However, the parole guidelines do not allow for petitioner to receive statutory good time credit for the time he spent on parole.

When petitioner was released on parole in 1980 he had 3,123 days remaining to serve on his sentence. He was credited with 794 days for his "street time". Petitioner thus has 2329 days remaining to serve. Petitioner is being granted statutory good time on the remaining days at the rate of ten days a month for a total of 765 days. The Parole Commission then subtracted the 765 days from his full term date of May 26, 1989 to arrive at his mandatory release date of April 27, 1987.

■■ Petitioner misunderstands the nature of parole. Parole is not a right but only an expectation that may be granted by the Parole Commission. *Stroud v. U.S. Parole. Commission,* 668 F.2d 843 (5th Cir. 1982). Parole is only "a correctional device authorizing service of sentence outside the penitentiary." *Morrissey v. Brewer, Warden, et al.,* 443 F.2d 942, 947 (8th Cir.1971); the parole is still "in custody."

The Supreme Court of the United States discussed the function of parole in *Morrissey v. Brewer,* 408 U.S. 471, 477, 92 S.Ct. 2593, 2598, 33 L.Ed.2d 484 and stated:

> Before reaching the issue of whether due process applies to the parole system, it is important to recall the function of parole in the correctional process.
>
> During the past 60 years, the practice of releasing prisoners on parole before the end of their sentences has become an integral part of the penological system. Note, Parole Revocation in the Federal System, 56 Geo.L.J. 705 (1968). Rather than being an *ad hoc* exercise of clemency, parole is an established variation on imprisonment of convicted criminals. Its purpose is to help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term of the sentence imposed. It also serves to alleviate the costs to society of keeping an individual in prison.[2] The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence. Under some systems, parole is granted automatically after the service of a certain portion of a prison term. Under others, parole is granted by the discretionary action of a board, which evaluates an array of information about a prisoner and makes a prediction whether he is ready to reintegrate into society.
>
> To accomplish the purpose of parole, those who are allowed to leave prison early are subjected to specified conditions for the duration of their terms. These conditions restrict their activities substantially beyond the ordinary restrictions imposed by law on an individual citizen. Typically, parolees are forbidden to use liquor or to have associations or correspondence with certain categories of undesirable persons. Typically, also they must seek permission from their parole officers before engaging in specified activities, such as changing employment or living quarters, marrying, acquiring or operating a motor vehicle, traveling outside the community, and incurring substantial indebtedness. Additionally, parolees must regularly report to the parole officer to whom they are assigned and sometimes they must make periodic written reports of their activities. Arluke, A Summary of Parole Rules—Thirteen Years Later, 15 Crime & Delin. 267, 272–273 (1969).

Then at 483, 92 S.Ct. at 2601 the Court went on to say:

> Release of the parolee before the end of his prison sentence is made with the recognition that with many prisoners there is a risk that they will not be able to live in society without committing additional antisocial acts. Given the previous conviction and the proper imposition of conditions, the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole.

The petitioner's full term expiration date was originally on May 26, 1989. Petitioner's full term expiration date has not changed and cannot be changed due to the revocation of his parole.

This court has addressed the issue petitioner presents here directly on point in *Kloner v. Wilkinson,* 418 F.Supp. 608 (D.Conn.1976), *aff'd in part, revs'd in part on other grounds,* 535 F.2d 730 (2d Cir. 1976), wherein the petitioner claimed he had served 24 months of a five year sentence, was paroled, rearrested and his parole revoked. The petitioner in that case claimed that after serving an additional 16 months he had served the two-thirds statu-

tory requirement and should be released under § 4206(d) of the Parole Commission and Reorganization Act, 18 U.S.C. § 4201 et seq., Pub.L. 94–233 (Mar. 15, 1976). The court held:

> The legislative history of the bill demonstrates that petitioner's claim is without merit. Senator Burdick introduced the conference committee report on the floor of the Senate. Referring to § 4206(d), he said:
>
>> The legislation also provides new parole criteria which come into effect when the prisoner has completed two-thirds of his sentence, which are designed to complement the present statutory provisions for good time and assure that prisoners with long sentences have at least some period of supervision in their community before total release from federal custody. *For those prisoners whose parole has been revoked and who have been returned to prison, it is intended that the two-thirds be based upon time remaining to be served when they are reimprisoned.*
>
> 122 Cong.Rec. No. 28 at S2573 (Mar. 2, 1976) (emphasis added). Representative Kastenmeier, who reported the bill to the House of Representatives, reiterated Burdick's remarks. 122 Cong.Rec. No. 29 at H1500 (Mar. 3, 1976). The views of Senator Burdick and Representative Kastenmeier for the Conference Committee on this section clearly comport with the purpose of the Act.
>
> One example will demonstrate the invalidity of petitioner's claims. An adult offender with very good offender characteristics sentenced to a five-year term of incarceration for extortion could be paroled at 36 months. If he subsequently violated his parole, on petitioner's reading of this section he could be reincarcerated only for a maximum of four months. In such a situation, the power given the Commission by 18 U.S.C. § 4214(d) & (e) would be rendered largely illusory because the Commission's continuing authority to incarcerate would be severly limited. Thus it is evident that petition-

er's interpretation of the statute is not only unsupported by the legislative history, but contravenes the purpose of the statute.

*Id.* at 609.

In light of the foregoing, this court hereby finds that petitioner's claim is without merit and denies the petition for habeas corpus relief and orders said case DISMISSED. SO ORDERED.