**Darrell MARTIN, Appellee,**

v.

**Herman SOLEM, Warden, South Dakota State Penitentiary, and Mark V. Meierhenry, Attorney General, State of South Dakota, Appellants.**

**Nos. 85–5298, 86–5014.**

United States Court of Appeals, Eighth Circuit.

Submitted May 14, 1986.

Decided Sept. 16, 1986.

Rehearing and Rehearing En Banc Denied Nov. 14, 1986 in No. 86–5014.

---

Sherri L. Sundem, Asst. Atty. Gen., Pierre, S.D., for appellants.

Mark F. Marshall, Rapid City, S.D., for appellee.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and BOWMAN, Circuit Judge.

McMILLIAN, Circuit Judge.

In appeal No. 85–5298 the state of South Dakota appeals from an order entered in the District Court for the District of South Dakota granting Darrell Martin's request for release on bail from the state penitentiary pending disposition of his petition for writ of habeas corpus. In appeal No. 86–5014 the state of South Dakota appeals from a final order entered in the District Court for the District of South Dakota granting Martin's habeas petition.

For reversal the state argues that the district court erred in (1) granting Martin's request for release on bail pending disposition of his habeas petition, (2) holding Martin had exhausted available state remedies on his first habeas claim, and (3) holding the state courts' findings about why Martin did not make combined restitution and fine payments were not supported by the record. For the reasons discussed below, we reverse the release order in appeal No. 85–5298 and reverse the order granting habeas relief in appeal No. 86–5014.

## FACTS

The following statement of facts is taken in large part from *State v. Martin*, 368 N.W.2d 37 (S.D.1985) (Wollman, J.).[1] In 1979 Martin was convicted of third-degree burglary and sentenced to 8 years imprisonment and a $7,000 fine. The state trial court later suspended 3 years of the sentence and $4,000 of the fine on the condition that Martin make restitution to the burglary victim, reimburse the county for the cost of his court-appointed defense attorney, and pay the defense attorney the difference between the total amount of attorney's fees and the amount paid by the county. Martin's conviction was affirmed on direct appeal by the South Dakota Supreme Court. *State v. Martin*, 287 N.W.2d 102 (S.D.1980).

Martin was paroled in September 1980 and remained under parole supervision until December 14, 1982. Martin and the state disagreed about Martin's obligations under the suspended sentence. In July 1982 a state parole officer had notified Martin by letter that, under the terms of his suspended sentence, he was required to make a combined restitution and fine payment of $30 per month and he would be "under supervision" until the suspended sentence expired on December 14, 1985. On January 3, 1983, the state parole officer again notified Martin by letter that supervision of the suspended sentence would continue until December 1985, reminded Martin that he was required to report every month to the state parole office, and enclosed a copy of the certificate issued by the warden of the state penitentiary discharging Martin from parole.

Martin failed to submit a parole report for the month of December 1982. The state parole officer scheduled a meeting for a date in January 1983. Martin failed to appear for the meeting. On January 26, 1983, the state parole officer received a letter from an attorney on behalf of Martin. In this letter the attorney stated that

---

1. The Honorable Roger L. Wollman is now a United States Circuit Judge for the Eighth Circuit.

Martin believed that as of December 14, 1982, he was no longer subject to state supervision because he had received a certificate of discharge from parole. The state parole officer then unsuccessfully attempted to inform Martin that Martin's interpretation of the certificate of discharge and the suspended sentence was incorrect.

In February 1983 the state parole officer by letter notified the county prosecuting attorney that Martin had failed to comply with the conditions of his suspended sentence. In March 1983 the county prosecuting attorney filed a petition for revocation of probation in state trial court on the ground of failure to make the combined restitution and fine payments as required. The revocation hearing was delayed when Martin failed to appear but was eventually held in August 1984. Martin was represented by counsel. The state trial court found Martin had failed to make the combined restitution and fine payments and had also failed to remain in contact with his parole officer as required. The state trial court specifically found that although there was some evidence of disability, Martin was not totally disabled, was able to work and could have made partial payments. In addition, the state trial court found Martin had intentionally refused to make any additional payments. *Id.* at 38. The state trial court then revoked the suspended sentence and fine and ordered Martin to be returned to the state penitentiary.

Martin challenged the reinstatement of the suspended sentence and fine in the South Dakota Supreme Court on three grounds: (1) the state trial court lacked jurisdiction to revoke probation because no probation had been imposed, (2) if probation had been imposed, the state trial court could not lawfully reinstate the suspended sentence and reincarcerate him because he had received a certificate of discharge from

parole, and (3) revocation of probation was based solely upon his indigency in violation of due process, citing *Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983) (*Bearden* ).

The state supreme court held that the first two arguments had been conclusively resolved against Martin in its recent prior decisions. *State v. Martin,* 368 N.W.2d at 39 (citing state supreme court decisions). The state supreme court then addressed Martin's principal argument that the state trial court unlawfully revoked his probation on the basis of his indigency. The state supreme court held the record supported the state trial court's findings that although Martin was able to work and was able to make partial payments, he had intentionally refused to make any additional payments because he had unilaterally decided that he was no longer bound by the terms and conditions of the suspended sentence.[2] Two state supreme court justices dissented, holding, each on slightly different grounds, the state trial court could not lawfully revoke probation and reinstate the suspended sentence. *Id.* at 40 (Fosheim, C.J., dissenting); *id.* (Henderson, J., dissenting).

In May 1985 Martin filed a petition for writ of habeas corpus in federal district court. In July 1985 he filed a request for release on bail from the state penitentiary pending disposition of his habeas petition and an amended habeas petition in which he claimed (1) the imposition of the suspended sentence violated due process because the state trial court did not have jurisdiction to revoke his probation and (2) the record did not establish that he had failed to make bona fide efforts to pay or that alternatives to imprisonment were inadequate to satisfy the state's interests in punishment and deterrence.

---

**2.** The state supreme court also held that the record supported the state trial court's finding that Martin had failed to remain in contact with the state parole officer as required and that this failure was an adequate, independent ground for revocation of probation. *State v. Martin,* 368 N.W.2d 37, 39 (S.D.1985). However, the

state cannot use this ground to justify revocation of probation because it was not listed in the petition for revocation of probation and Martin did not receive written notice of it. *See Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1975).

In August 1985 the district court granted Martin's request for release on bail pending disposition of his habeas petition and ordered his release from the penitentiary subject to certain conditions. *Martin v. Solem,* No. CIV–85–5089 (D.S.D. Aug. 22, 1985) (release order); *id.* (Aug. 12, 1985) (memorandum decision). The district court found that the habeas petition raised a substantial question about the enforceability of suspended sentences following release from parole and that exceptional circumstances existed because Martin had already served his sentence and had received a certificate of discharge from parole. *Id.* (Aug. 12, 1985) (memorandum decision), *citing Aronson v. May,* 85 S.Ct. 3, 13 L.Ed.2d 6 (1964) (Douglas, J.) (chambers opinion). The state filed a notice of appeal (No. 85–5298) and motion for stay pending appeal. The motion for stay pending appeal was denied on August 30, 1985.

The district court subsequently granted Martin's habeas petition. *Martin v. Solem,* No. CIV–85–5093 (D.S.D. Dec. 13, 1985). The district court held Martin had fairly presented the substance of his first claim to the state courts and therefore had exhausted available state remedies, the record did not support the state courts' findings about Martin's ability to make the combined restitution and fine payments, and the state trial court did not correctly follow *Bearden.* Slip op. at 6, 10. The state filed a notice of appeal (No. 86–5014) and a motion for stay pending appeal. On January 27, 1986, we granted the state's motion to consolidate the two appeals, denied the state's motion for stay pending appeal, and denied without prejudice Martin's motion to dismiss appeal No. 85–5298 as moot.

**APPELLATE JURISDICTION**

The existence of two district court docket numbers has caused some confusion on appeal. For reasons which do not appear in the record, the original habeas petition was docketed in the district court as No. CIV–85–5089, but the amended habeas petition was later docketed separately as No. CIV–85–5093. After examining the district court files in both actions, we conclude the amended habeas petition was mistakenly docketed as a separate action. The designation of a second docket number may have occurred in October 1985 when the case was reassigned to another district judge. The request for release on bail pending disposition of the habeas petition was filed and the order granting release on bail was entered in No. CIV–85–5089, and the order granting habeas relief was entered in No. CIV–85–5093. The state filed a notice of appeal in each action.

■ With respect to appeal No. 86–5014 involving the order granting habeas relief, that order is the "final decision" of the district court which terminated the underlying habeas action. Thus, we have appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253.

However, in appeal No. 85–5298 we are presented with two interesting jurisdictional problems. The first question is whether the release order is final and therefore appealable. The state argues the release order is final and appealable under the collateral order exception, *see Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and draws an analogy to cases holding denials of pre-trial bail reviewable on appeal, *see Stack v. Boyle,* 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951). The state also argues the release order raises a serious and unsettled issue that may become moot, and thus evade effective appellate review, once the underlying habeas action is decided on the merits.

Martin argues the release order is interlocutory because it did not dispose of the habeas petition and not collateral because it is intertwined with the merits of the underlying habeas action.

■ We conclude the release order, even though interlocutory, is final, and thus appealable, because it is a collateral order. *See Cherek v. United States,* 767 F.2d 335, 336–37 (7th Cir.1985); *Iuteri v. Nardoza,* 662 F.2d 159, 161 (2d Cir.1981); *cf. Luther v. Molina,* 627 F.2d 71, 73 n. 1 (7th Cir.

1980) (release pending revocation proceedings). Martin sought only release on bail pending disposition of his habeas petition and he was awarded the relief he sought. No further action on the request for release was contemplated by the parties or by the district court. Moreover,

> [t]here are compelling reasons to entertain appeals by the Government from orders granting bail in habeas corpus proceedings where, as here, incarceration has resulted from a conviction. Because of the conviction, the Government has a justified interest in [the habeas] petitioner's continued incarceration, and [the] petitioner has the burden of showing why bail is warranted.

> The object of habeas corpus proceedings is freedom from incarceration. Release on bail supplies [at least in part] the sought-after remedy before the merits of [the] petitioner's application are determined. If review of the grant of bail must await the district court's decision on the habeas corpus application, the review will be substantially meaningless.

*Iuteri v. Nardoza*, 662 F.2d at 161 (citation omitted).[3]

■ The second jurisdictional problem is that of mootness. As noted above, when the district court granted habeas relief in December 1985, the release order was in effect superseded by and "merged" into the order granting relief on the merits. Martin was then free because the district court had granted habeas relief, not because the district court had granted his request for bail. The state argues that even if the release order is technically moot as to Martin, it is "capable of repetition, yet evading review," and therefore can be reviewed on appeal. "To come within this rule the challenged action must be too short in duration to be fully litigated prior to its cessation and there must be an expec-

tation that the complaining party will again be subjected to the protested action." *Luther v. Molina*, 627 F.2d at 74 (citation omitted). We believe the release order falls within this exception. It is extremely likely that in most cases the district court will have decided the habeas petition before this court, and possibly the Supreme Court, can review the release order on appeal. It is also extremely likely that other habeas petitioners will seek release on bail pending disposition of their habeas petitions.

## APPEAL No. 85–5298—RELEASE ORDER

■ "In spite of the lack of specific statutory authorization, it is within the inherent power of a District Court of the United States to enlarge a state prisoner on bond pending hearing and decision on his [or her] application for a writ of habeas corpus." *In re Wainwright*, 518 F.2d 173, 174 (5th Cir.1975) (per curiam) (petition for rehearing) (citations omitted). Release on bail pending disposition of the habeas petition, or pending appeal, requires the habeas petitioner to show not only a substantial federal constitutional claim that "presents not merely a clear case on the law, but a clear, and readily evident, case on the facts," *Glynn v. Donnelly*, 470 F.2d 95, 98 (1st Cir.1972) (citation omitted), but also the existence of "some circumstance making [the request] exceptional and deserving of special treatment in the interests of justice." *Aronson v. May*, 85 S.Ct. at 5. *See e.g., Iuteri v. Nardoza*, 662 F.2d at 161; *Ostrer v. United States*, 584 F.2d 594, 599 (2d Cir.1978). Habeas petitioners are rarely granted release on bail pending disposition or pending appeal. *See Johnston v. Marsh*, 227 F.2d 528, 529 (3d Cir.1955) (medical emergency); *cf. Boyer v. City of Orlando*, 402 F.2d 966, 967–68 (5th Cir. 1968) (extraordinary attempt to accommo-

---

3. Alternatively, the state could have sought immediate appellate review of the release order by filing a petition for writ of mandamus. *See, e.g., Jago v. United States Dist. Court,* 570 F.2d 618, 619 (6th Cir.1978) (release on bail pending appeal of habeas decision); *Glynn v. Donnelly,* 470 F.2d 95, 96–97 (1st Cir.1972); *Woodcock v.*

*Donnelly,* 470 F.2d 93, 94 (1st Cir.1972) (per curiam); *Johnston v. Marsh,* 227 F.2d 528, 529–31 (3d Cir.1955); *cf. United States ex rel. Slough v. Yeager,* 449 F.2d 755, 756 n. 3 (3d Cir.1971) (jurisdiction assumed, but whether appellate or original jurisdiction left to case-by-case determination) (per curiam).

date exhaustion of available state remedies with petitioner's clearly meritorious constitutional claim).

■ The state argues the district court erred in granting Martin's release on bail pending disposition of his habeas petition. The state argues Martin failed to raise a substantial federal constitutional question or establish the existence of extraordinary circumstances. We agree.

■ First, the district court erred in holding a substantial federal constitutional question existed because the members of the state supreme court disagreed about whether, as a matter of state law, the state could enforce a suspended sentence by revocation of probation following a prisoner's release from parole. As discussed further below, this question is a matter of state law and does not raise a substantial federal constitutional question. *See, e.g., Glucksman v. Birns,* 398 F.Supp. 1343, 1352 (S.D. N.Y.1975). Second, no extraordinary circumstances were shown in the present case. Martin argued that his reincarceration was unlawful because he had already served his sentence and had been discharged. However, there is nothing unusual about a claim of unlawful confinement in a habeas proceeding. Martin made no showing of any medical emergency or any other special circumstances.

We hold the district court erred in granting Martin's request for release on bail pending disposition of his habeas petition and reverse the release order.

## APPEAL No. 86–5014—HABEAS RELIEF

### Exhaustion

■ As a threshold matter, we must decide whether the district court erred in holding Martin's first claim in his amended habeas petition had been exhausted. A district court cannot consider a habeas petition which contains exhausted and unexhausted federal claims. *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *see, e.g., Hall v. Iowa,* 705 F.2d 283, 286–87 (8th Cir.), *cert. denied,* 464 U.S.

934, 104 S.Ct. 339, 78 L.Ed.2d 307 (1983). Exhaustion

> requires a federal habeas petitioner to provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his [or her] constitutional claim. It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made. In addition, the habeas petitioner must have "fairly presented" to the state courts the "substance" of his [or her] federal habeas corpus claim.

*Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (per curiam) (citations omitted); *see Picard v. Connor,* 404 U.S. 270, 276–78, 92 S.Ct. 509, 512–13, 30 L.Ed.2d 438 (1971); *Purnell v. Missouri Department of Corrections,* 753 F.2d 703, 706–08 (8th Cir.1985); *Graham v. Solem,* 728 F.2d 1533, 1535–36 (8th Cir.) (banc), *cert. denied,* 469 U.S. 842, 105 S.Ct. 148, 83 L.Ed.2d 86 (1984); *Morrow v. Wyrick,* 646 F.2d 1229, 1232 (8th Cir.) (citation to state cases involving federal constitutional issues), *cert. denied,* 454 U.S. 899, 102 S.Ct. 401, 70 L.Ed.2d 216 (1981); *Thomas v. Wyrick,* 622 F.2d 411, 412 (8th Cir.1980) (requiring citation to specific federal constitutional provision or federal case); *cf. Daye v. Attorney General,* 696 F.2d 186, 193–94 (2d Cir.1982) (banc) (exhaustion if specific constitutional right is obvious in factual allegation or argument).

■ The first claim has not been exhausted. Martin's first claim alleged that the revocation of probation and the imposition of the suspended sentence were illegal and violated due process because the state trial court lacked jurisdiction to revoke his probation. In the state courts Martin had asserted substantially the same claim and used the conclusory term "unconstitutional," but he did not refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue. *Purnell v. Missouri Department of Corrections,* 753 F.2d at 707; *Thomas v. Wyrick,* 622 F.2d

at 413. Even under the arguably more lenient *Daye v. Attorney General* test, Martin failed to assert his claim "in terms so particular as to call to mind a specific right protected by the Constitution" or to allege "a pattern of facts that is well within the mainstream of constitutional litigation." 696 F.2d at 194.

Martin argues the state supreme court could not have overlooked the constitutional implications of his arguments about the lack of jurisdiction and the illegal sentence. *See Graham v. Solem,* 728 F.2d at 1536 (state courts are able to recognize federal constitutional issues even when no explicit reference is made to the federal constitution). The district court concluded that even in the absence of any federal citations or constitutional references, liberty is "so fundamental that any court should be able to recognize that being imprisoned without authority invokes federal constitutional issues even when no explicit reference is made to the federal constitution." Slip op. at 6. However, the state supreme court opinion itself suggests the state supreme court did not view the arguments in federal constitutional terms at all, but instead addressed and resolved them solely on the basis of state law. The state supreme court opinion stated: "Although [Martin] has raised three issues on appeal, we conclude that the first two issues [referring to the lack of jurisdiction and the imposition of the suspended sentence arguments] have been answered adversely to him by our decisions in *State v. Adams,* 360 N.W.2d 519 (S.D.1985); *Application of Adams,* 360 N.W.2d 513 (S.D.1985); and *State v. Holter,* 340 N.W.2d 691 (S.D.1983)." 368 N.W.2d at 38–39. A similar argument that federal constitutional implications must have been "self-evident" was rejected in *Anderson v. Harless,* 459 U.S. at 7, 103 S.Ct. at 278.

Failure to exhaust the first claim, however, did not deprive the district court of the right to consider the exhausted *Bearden* claim because the unexhausted claim did not state a federal constitutional claim cognizable in federal habeas corpus

proceedings. "Nonexhausted state claims included in a federal habeas petition and having no constitutional relevance should not deprive a federal district court of the right to entertain other exhausted claims which do have their roots under the federal Constitution." *Hall v. Iowa,* 705 F.2d at 287. Although "[a]n absence of jurisdiction in the convicting court is ... a basis for federal habeas corpus relief cognizable under the due process clause," *Lowery v. Estelle,* 696 F.2d 333, 337 (5th Cir.1983), here Martin's claim that the state trial court lacked jurisdiction to revoke probation and impose the suspended sentence is wholly premised upon state law. The state supreme court held that under state law the state trial court did have jurisdiction to revoke Martin's probation and impose the suspended sentence. 368 N.W.2d at 39. "Determination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary." *Wills v. Egeler,* 532 F.2d 1058, 1059 (6th Cir.1976) (per curiam). With the exception of due process claims, state prisoners' claims of error involving sentencing, parole, probation, and revocation of probation or parole are matters governed by state law that are not cognizable in federal habeas corpus proceedings. *See, e.g., Glucksman v. Birns,* 398 F.Supp. at 1352 (sentencing and service of sentence); *Brown v. Slayton,* 342 F.Supp. 61, 65 (W.D.Va.1972) (probation and execution of sentence); *Howard v. Craven,* 306 F.Supp. 730, 732 (C.D.Cal.1969) (revocation of probation and imposition of imprisonment).

**Merits**

We finally reach the *Bearden* issue. The state argues the district court erred in holding the record did not fairly support the findings of the state courts and the state trial court failed to correctly follow *Bearden.* The district court found the state trial court had improperly revoked Martin's probation without determining whether he had the means to pay or whether he had failed to make sufficient bona fide efforts legally to acquire the resources to pay. Slip op. at 10–11. The district

court also found the state trial court's findings that Martin was not totally disabled and had some ability to work and its reference to the availability of odd jobs did not constitute the requisite *Bearden* finding that Martin had not made sufficient bona fide efforts to find work. Slip op. at 11.

For the reasons discussed below, we agree the state trial court did not correctly follow *Bearden.* However, we hold the district court erred in granting habeas relief because the record supports revocation of Martin's probation on the alternative ground of willful refusal to pay.

In *Bearden* the Supreme Court held that in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternative measures of punishment other than imprisonment. Only if alternative measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his [or her] conditional freedom simply because, through no fault of his [or her] own, he [or she] cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment.

461 U.S. at 672–73, 103 S.Ct. at 2073 (footnote omitted).

■ We have carefully reviewed the record of the state court probation revocation hearing. The evidence consisted largely of testimony by Martin's former and current state parole officers. Martin's former state parole officer testified Martin had initially made several of the combined restitution and fine payments, was at least partially disabled, received disability benefits and food stamps, had worked part-time as a musician and as a crane operator but was unemployed, and had very limited assets and income. The current state parole officer did not know whether Martin had any assets, income, job skills, or employment opportunities. Documentary evidence, including the letter written by an attorney on Martin's behalf, was also admitted. Martin did not testify.

If the state trial court had revoked Martin's probation solely because he had not made sufficient bona fide efforts legally to acquire the means to pay, we would affirm the district court's order granting habeas relief because we agree the state trial court did not comply with the *Bearden* analysis. The state court only found Martin had not made the combined restitution and fine payments as required and had some ability to work. The state trial court failed to determine, as required by *Bearden,* whether Martin had made sufficient bona fide efforts legally to acquire the resources to pay. In particular, the state trial court's findings that Martin was not totally disabled and had some ability to work and its gratuitous reference to the availability of odd jobs cannot meet the *Bearden* test. *Id.* at 673, 103 S.Ct. at 2073.

However, Martin's apparent indigency was not the only basis for the revocation of probation. The state courts also found Martin had intentionally refused to make any additional payments for reasons unrelated to his ability, or lack of ability, to pay. The alternative finding of willful refusal to pay is supported by the record. Martin's state law jurisdiction arguments and the January 1983 letter to the state parole officer written by an attorney on Martin's behalf showed that Martin had willfully refused to make any additional combined restitution and fine payments because he had unilaterally (and, as it turned out, mistakenly) decided, as a matter of state law, he was no longer bound by the terms and conditions of the suspended sentence. 368 N.W.2d at 39. Under *Bearden,*

"[i]f the probationer willfully refused to pay ..., the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority." 461 U.S. at 672, 103 S.Ct. at 2073.

Accordingly, in appeal No. 85–5298 the release order is reversed and in appeal No. 86–5014 the order granting habeas relief is reversed.

BRIGHT, Senior Circuit Judge, dissenting.

I dissent.

The majority today effectively deprives the indigent probationer of his freedom simply because he is, in fact, indigent and unable to pay the fine imposed, a deprivation which is contrary to the concept of fundamental fairness central to the Fourteenth Amendment to the United States Constitution.

In *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), the United States Supreme Court made clear that a sentencing court cannot revoke a defendant's probation for failure to pay the fine and restitution imposed upon him without evidence and findings that the defendant was somehow responsible for his failure to do so or that alternative forms of punishment are inadequate to meet the State's sentencing goals.

> We hold, therefore, that in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternative measures of punishment other than imprisonment. Only if alternative measures are not adequate to meet the State's interests in punishment

and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the petitioner of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment.

*Bearden, supra*, 461 U.S. at 672–73, 103 S.Ct. at 2073 (footnote omitted).

The majority agrees with the district court that the state trial court did not comply with the *Bearden* analysis in using as a basis for revocation Martin's failure to make sufficient bona fide efforts legally to acquire the resources to pay his fine and restitution. Indeed, the state trial court made no such finding. That court simply found, based on the evidence adduced at the evidentiary hearing and from the judge's own observation of Martin at the hearing, that Martin is not totally disabled and has some ability to earn enough money to make at least partial payment of the fine, attorneys' fees and victim restitution. Transcript of Hearing on Violation of Suspended Sentence at 59. The state trial judge further observed:

> I believe the Defendant has the ability to do some type of work. The record indicates that he was employed at Sioux Falls, in some manner or other, indicating that at that point in time he had some earning ability. However, I believe as I have observed the Defendant that at least he has the ability to shine shoes, if he would buy a can of shoe polish, buy a used towel, he could shine shoes in order to make restitution to the person that he thieved from. I believe he has the ability to wash dishes or pull weeds or deliver newspapers or sell Avon products from door-to-door.

*Id.* at 60. As the majority points out, such a finding is in no way equivalent to the finding required by *Bearden, supra*, 461 U.S. at 673, 103 S.Ct. at 2073, that Martin failed to make sufficient bona fide efforts to find work. Further, this observation is completely without support in the record.

As long as *ipse dixit* statements of the judicial fact-finder (the state judge) serve to support the judge's decision to return Martin, a cripple, to the penitentiary, this writer as a Dakotan, although from North, not South, Dakota, might suggest a contrary conclusion as to the shoe shining occupation. Given the sad state of the farm economy which underpins prosperity in the Dakotas, of which this court can take judicial notice, I doubt that Martin could make a living shining shoes in South Dakota.

The majority, however, upholds the State's revocation of Martin's probation on the finding that he intentionally refused to make any additional payments for reasons unrelated to his ability, or lack of ability, to pay. The state trial court found that Martin intentionally failed to comply with the terms and conditions of the suspension of his sentence. "If the probationer has willfully refused to pay the fine or restitution *when he has the means to pay,* the State is perfectly justified in using imprisonment as a sanction to enforce collection." *Id.* at 668, 103 S.Ct. at 2070 (emphasis added). However, there is absolutely no finding, nor is there evidence in the record to support a finding, that Martin had any means by which to pay the fine, restitution and/or attorney's fees. The only evidence in the record does, in fact, refute any such finding. Scott Schuft, Martin's supervising agent while on parole from the South Dakota State Penitentiary and while under supervision for the suspended portion of his sentence, testified that his conclusion, drawn from the income and rent receipts Martin showed him, was that Martin probably did not have the resources to make the payments due. Transcript of Hearing on Violation of Suspended Sentence at 36–37. He further testified that Martin told him he was having a difficult time paying for food and that it might be easier to return to prison. *Id.* at 37. Schuft indicated he was aware that Martin had a disability that made it very difficult for him to work, *id.,* and that the source of Martin's income was social security disability and food stamps, *id.* at 38. We interpret the record as indicating this disability is total and permanent for social security purposes.

In light of such evidence, the decision to imprison Martin for failure to make the payments ordered is a clear violation of the principle of fundamental fairness inherent in the Fourteenth Amendment and espoused by the Supreme Court in *Bearden.* As discussed by the *Bearden* Court, this concept of fundamental fairness has consistently guided the Court in its treatment of indigents in the criminal justice system. *Bearden, supra,* 461 U.S. at 664–65, 103 S.Ct. at 2068. To return Martin to prison simply because he is unable to pay the fines, attorney's fees and restitution flies in the face of the Court's history making the criminal justice system independent of one's financial status. I therefore believe the decision of Judge Bogue of the district court, who would only grant a writ of habeas corpus in a most egregious case, should be affirmed.

I further disagree with the majority's decision to reverse the district court's order releasing Martin on bail pending disposition of his habeas petition. As recognized by the majority, it is within the discretion of the district court to enlarge a state prisoner on bond pending a hearing and decision on a writ of habeas corpus. *In re Wainwright,* 518 F.2d 173, 174 (5th Cir.1975). Said discretion must, of course, be exercised sparingly and only where a substantial constitutional claim exists together with extraordinary or exceptional circumstances justifying release. *Calley v. Callaway,* 496 F.2d 701, 702 (5th Cir.1974). *See also Aronson v. May,* 85 S.Ct. 3, 5, 13 L.Ed.2d 6 (1964); *Glynn v. Donnelly,* 470 F.2d 95, 97–98 (1st Cir.1972). In his amended petition for writ of habeas corpus Martin raises two grounds:

*Ground one:*

The Circuit Court was without jurisdiction to revoke petitioner's probation because the probationary term had expired. On February 20, 1979, Petitioner was convicted of third degree burglary. He was sentenced to eight years in the State Penitentiary and

fine [sic] Seven Thousand Dollars ($7,000) on March 14, 1979. The petitioner was paroled on September 30, 1980 and his parole supervision ended on December 14, 1982. The Custer County State's Attorney filed a petition of revocation of probation on March 10, 1983, some three months after the court's continuing jurisdiction over the Petitioner ended. Accordingly, the revocation of probation after expiration of the parole terms is both an illegal sentence and a violation of Petitioner's federally guaranteed rights of due process of law.

*Ground two:*

Assuming on for the sake of pleading the Circuit Court had jurisdiction to revoke probation the record is devoid of any evidence that Petitioner failed to make bona fide effort to make restitution, or that alternative forms of punishment were inadequate to vindicate the state's interests thus violating Petitioner's federally protected rights of due process and equal protection.

Both grounds raise substantial federal constitutional questions. As discussed above, the second ground raises substantial questions of fundamental fairness inherent in the due process clause. In addition, the first ground raises a substantial federal constitutional question regarding the serious allegation of infringement of Martin's liberty interest by the state. The mere fact that Martin did not state in his petition the federal constitutional provision violated is irrelevant. The facts alleged, suggesting that the State imprisoned Martin without any authority to do so, immediately bring to mind the federal constitutional question of the State's denial of Martin's liberty interest.

Merely raising substantial federal constitutional questions, however, is not enough to enlarge a habeas petitioner absent special circumstances. *Benson v. California,* 328 F.2d 159, 162 n. 2 (9th Cir.1964). The circumstances of this case justify the district judge's exercise of his discretion to enlarge Martin. Martin had been free on parole since September 30, 1980, nearly three years before the State began its revocation proceedings. The State had apparently decided in 1980 that Martin's release from prison posed no threat to society. The State has not demonstrated that because Martin has not been making the required payments he is now any sort of threat to society. Indeed, the State has not demonstrated that any sort of prejudice will inure to it if Martin is allowed to remain free pending determination of the writ.

I thus believe that Judge Porter's decision to enlarge Martin on bail was a valid exercise of his discretion given the substantial federal constitutional questions raised by the writ and the circumstances surrounding Martin's release.

Finally, I disagree with the majority's conclusion that Martin's first ground advanced for habeas relief is not exhausted. In order to have fully exhausted a claim, "the habeas petitioner must have 'fairly presented' to the state courts the 'substance' of his federal habeas corpus action." *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (per curiam). To do so the petitioner need only cite to the provision of the federal constitution or case addressing the constitutional basis of the claim, or make a discernible reference to a federal constitutional right. *Graham v. Solem,* 728 F.2d 1533, 1536–37 (8th Cir.) (en banc), *cert. denied,* 469 U.S. 842, 105 S.Ct. 148, 83 L.Ed.2d 86 (1984). "[W]e must bear in mind that state courts, as co-equal guardians of constitutional rights, are able to recognize federal constitutional issues even when no explicit reference is made to the federal constitution." *Id.* at 1537.

Martin's first ground asserts a due process violation by the state court when it revoked his probation after his parole term had ended. The substance of this claim was presented to the South Dakota Supreme Court in the first two issues Martin presented on appeal: (1) whether the court had authority to revoke probation when no probation was imposed and (2) whether the

revocation of probation and ordered incarceration constitutes imposition of jail time above and beyond the original sentence. These assertions clearly amount to allegations of due process violations under federal law and one at even the most cursory glance recognizes the implications of infringement on Martin's liberty interest. The fact that the South Dakota Supreme Court did not address the federal constitutional issues present is not determinative of the exhaustion question. The test is, as above stated, whether petitioner fairly presented the substance of his federal constitutional claims to the state court. *Anderson v. Harless, supra,* 459 U.S. at 6, 103 S.Ct. at 277. Martin did so and thus exhausted both of the grounds presented in his petition for writ of habeas corpus.

For the foregoing reasons, I would affirm the order of the district court granting Martin's petition for writ of habeas corpus.