Arlester E. SCOTT, Appellee,

v.

Jim JONES, Appellant.

No. 88–1930.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 17, 1988.

Decided Dec. 7, 1988.

Rehearing and Rehearing En Banc Denied Jan. 18, 1989.

Patrick L. King, Asst. Atty. Gen., Jefferson City, Mo., for appellant.

Lawrence M. Berkowitz, Kansas City, Mo., for appellee.

Before JOHN R. GIBSON, WOLLMAN and BEAM, Circuit Judges.

BEAM, Circuit Judge.

Jim Jones appeals from an order of the district court granting Arlester E. Scott's petition for habeas corpus. We stayed execution of the writ on July 13, 1988, and heard oral argument on August 17, 1988. We now reverse.

## I. BACKGROUND

### A. Claim Raised in Habeas Petition

Scott's petition contends that he has been twice tried for the same crime in violation of the double jeopardy clause of the United States Constitution. Petitioner Scott claims that the double jeopardy clause barred his state court retrial because the Missouri Court of Appeals determined that there was insufficient evidence to support the submission of his case to the jury at his initial trial.

We do not agree that the Missouri appeals court made such a finding. Additionally, we believe that a second appeals court opinion, rendered after Scott's retrial, cleared up any ambiguity that may have existed in the first opinion. Thus, the double jeopardy clause did not bar the second trial.

### B. First Trial

Petitioner was convicted of robbery in the first degree on October 21, 1981, after a four day jury trial. The central question at that trial was whether petitioner was the taller of the two men who robbed a Milgram's Food Store.

#### 1. The Robbery

On March 27, 1981, two men entered the Milgram Food Store in Jackson County, Missouri. One was tall. One was short. Both were black. The taller robber was carrying a grocery sack at the time he entered the store. The men stopped at the dairy case and pretended to shop.

Donald Gruis, the store manager, had just come on duty when the two men entered. As they were shopping, he went into the "back office." Prior to his returning to the back office, it appears that Wells Fargo had made a delivery of currency to the store. The currency had been placed in time locks located in the office. There was also a safe.

While Gruis was in the back office, employees Frank Starforth and Kathleen Jackson were having lunch in the employee "break" room which was adjacent to the office. The two men entered this room. The taller man withdrew a pistol from a bag. Within seconds they had both employees face away from them. The robbers then forced them into the back office where they encountered Gruis.

Once everybody was in the back office, Jackson and Starforth were ordered to lay on the floor. Duct tape was used to bind their hands behind their backs. Gruis, however, was permitted to remain standing in order to open the safe.

During this episode, another employee, Leonard Tripp, appeared. He was treated in the same manner as Jackson and Starforth. After the robbers finished the theft, they bound up Gruis's hands and departed. The entire robbery lasted from 5 to 10 minutes.

#### 2. State's Evidence of Identity

The state offered two pieces of evidence in support of its contention that petitioner was the taller robber. It submitted, as an exhibit, an empty carton that is alleged to have contained the duct tape used by the robbers. This container had petitioner's fingerprints on it. The state also presented eyewitness identification testimony through store manager Donald Gruis.

## II. FIRST APPEAL STATE v. SCOTT, 647 S.W.2d 601 (Mo.App.1983) (SCOTT I).

Petitioner raised 11 points of error in his first appeal to the Missouri Court of Appeals. As indicated, however, the issues relevant to this proceeding concern only those dealing with the admissibility of the

duct tape carton and the weight and sufficiency of the identification testimony of Gruis.

### A. Duct Tape Carton

The police criminal investigator was on vacation and did not testify at the first trial. Instead, the state called two previously undisclosed witnesses to lay foundation for admission in evidence of the duct tape carton. The *Scott I* court held that permitting the previously unrevealed witnesses to testify was reversible error. The appeals court further stated that the carton was inadmissible even with the testimony of the two undisclosed witnesses. And, for purposes of this appeal, we shall assume that *Scott I* properly found that the duct tape carton was inadmissible with the foundational evidence.

### B. Identification Testimony

Petitioner in his brief in *Scott I* contended that once the duct tape carton was removed from consideration, there was only Gruis's identification testimony that linked petitioner to the robbery. Petitioner's brief recognized, however, that under Missouri law, Gruis's testimony was sufficient to warrant submission of the case to the jury. The brief then asked the court to reconsider Missouri law, and to treat the question of identification as one of sufficiency, and not weight.

Petitioner now contends that *Scott I* did find the Gruis identification insufficient, as a matter of law, and by implication, overturned past Missouri case law by deciding that identification testimony presents a sufficiency question subject to appellate review. The district court agreed with petitioner's analysis of *Scott I.*

### III.   CONSTRUCTION OF *SCOTT I*

As indicated, the district court found that the *Scott I* court believed that Gruis's identification testimony, standing alone, was insufficient to submit the state's case to the jury. In interpreting an opinion of the appeals court of Missouri, the district judge made a determination of law. We give great deference to a resident federal judge's interpretation of the law of the state in which he sits. *Cf. Kansas State Bank v. Citizens Bank,* 737 F.2d 1490 (8th Cir.1984) (applying this type of review to a determination of the nature of a participation interest under Missouri securities law). However, we are not bound by such interpretation and must reverse if we believe the judge was in error. *Id.* This is such a case.

### A.   Interpretation of *Scott I*

■ The double jeopardy clause precludes a second trial once a reviewing court has found the evidence adduced at the first trial legally insufficient. *Burks v. United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 2150–51, 57 L.Ed.2d 1 (1978). The question before us is whether *Scott I* found that Donald Gruis's identification of petitioner as the taller robber—without any evidence of the duct tape carton—presented a case so lacking in proof that it "should not have even been *submitted* to the jury." *Id.* at 16, 98 S.Ct. at 2150 (emphasis in original). We do not believe it made such a finding.

#### 1.   *Gruis's Testimony*

At the first trial, Gruis testified that he had seen the taller robber at least three times in the store on dates prior to the robbery. During the robbery, he looked at the taller robber's face at least 3 minutes, from a distance between 3½ and 4 feet. The lighting conditions were bright. He remembered the taller robber as having abnormal lips, bug eyes, short hair, and a full beard. He thought petitioner was the taller robber. His reason for so thinking was that petitioner had the same characteristics. He quantified the certainty of his identification as being at least ninety percent. He stated that he could not be one hundred percent positive because the robber was bearded and petitioner, at trial, was not.

#### 2.   *Sufficiency and Weight of Gruis's Testimony Under Missouri Law*

Missouri cases have held that a tentative and uncertain identification of a defendant, such as testimony that the defendant looks

like, looks similar to, or resembles the person seen at the scene of the crime, is sufficient to allow the question of identity to go to the jury, even if this is the only evidence available which links the defendant to the crime. The question becomes one of the weight to be given the evidence by the jury as opposed to one of sufficiency of the evidence to permit jury consideration. *See State v. Franke,* 159 Mo.App. 535, 60 S.W. 1053, 1054 (1901); *State v. Brown,* 542 S.W.2d 789, 791 (Mo.App.1976). The competency of identification testimony is not affected by the witness's failure to testify positively about the identity. *State v. Maxwell,* 502 S.W.2d 382, 391 (Mo.App.1973). In instances of face to face robbery, the issue of identity is for the jury to decide and Missouri appellate courts are not to delve into a determination of the weight in such circumstances. *See id.* at 390.

### 3. *Scott I's Discussion of Gruis's Testimony*

■ We believe that *Scott I* did not depart from the above principles. Initially, the Missouri court opened its opinion by reversing because of "prejudice to the defendant when the state was permitted to call two witnesses not disclosed to the defense in pre-trial discovery." 647 S.W.2d at 603. The court then detailed the evidence "to compose the setting in which the testimony by the unendorsed witnesses was proposed." *Id.*

Petitioner relies on the following excerpts to establish that the court adopted his position that Gruis's testimony was insufficient as a matter of law:

> The store manager testified he thought Scott was the man but he was uncertain because the taller robber was bearded while, at trial, Scott was clean shaven. The three other employees expressed no opinion on identification of the robbers at all. Scott's implication in the crime rested entirely on a fingerprint comparison.

*Id.* at 604.

In discussing why the state's failure to comply with discovery was sufficiently prejudicial to warrant reversal, the court said:

> [T]he crucial nature of the evidence to be supplied * * * is self-evident. Without both witnesses, the state plainly had no case.

*Id.* at 606.

> That assurance [that a sufficient foundation be laid] was of particular importance here where Scott was not shown by other evidence to have had any connection with the exhibit [the duct tape carton] and upon that exhibit alone depended the entitlement of the state to take the case to the jury.

*Id.* at 608.

It seems to us that *Scott I* did not find Gruis's testimony insufficient to submit the case to the jury. Rather, the court was demonstrating how significantly defendant was prejudiced by the court's failure to exclude the state's unendorsed witnesses by highlighting the additional weight that such evidence added to the state's case. And, an appellate court's decision to afford a defendant a second opportunity to seek a favorable judgment based on its view of the weight of the evidence does not implicate the double jeopardy clause. *See Tibbs v. Florida,* 457 U.S. 31, 42–44, 102 S.Ct. 2211, 2218–19, 72 L.Ed.2d 652 (1982).

At least three reasons compel us to find that *Scott I* did not make a finding that there was insufficient evidence to convict at the first trial, and that the double jeopardy clause did not prevent the state from retrying petitioner.

#### a. *Established Precedent*

Initially, as indicated earlier, Gruis's testimony would have been sufficient under established Missouri law. Nowhere in *Scott I* does the court suggest that it is departing from such precedent.

#### b. *Method of Review*

Secondly, in those Missouri cases where sufficiency of the evidence was raised and the state's case included uncorroborated eyewitness identification, the court has evaluated the consistency of the witnesses' prior statements, *see State v. Johnson,* 595 S.W.2d 774, 776 (Mo.App.1980); whether

such testimony is substantial and probative, *see id.;* and the reasons surrounding a less than positive identification, *see State v. Timmons,* 584 S.W.2d 129, 133 (Mo.App. 1979). The *Scott I* court mentioned none of these tests. Considering the face to face observation and favorable lighting conditions, it is difficult to believe that the court would reject Gruis's testimony out of hand.

### C. *The Court's Own Language*

Thirdly, petitioner's brief in *Scott I* expressly sought a ruling that "Mr. Gruis' tentative identification of appellant, as the only evidence connecting appellant to the crime, was insufficient as a matter of law to make a submissible case on the issue of identity," and that it was error for the trial court not to grant petitioner's "Motion for Judgment of Acquittal." This issue was not specifically addressed in the opinion and therefore must be considered as an "[a]dditional point[ ] raised." *Scott I,* 647 S.W.2d at 610. These additional points were found to be "instances unlikely to occur on another trial or [to be] without merit." *Id.*[1]

### IV. ALTERNATIVE CONSTRUCTION OF *SCOTT I*

■ Petitioner was retried. Before his second trial, his motion raising his double jeopardy claim was denied. At his second trial, the evidence of the duct tape was properly admitted and Donald Gruis again testified. Petitioner was convicted and appealed (*Scott II*).

*Scott II* cleared up any ambiguity as to whether Gruis's identification testimony was sufficient evidence in its own right to submit the case to the jury at the first trial. The court held:

> Certainly, in the instant case, [presumably the second trial] the identification

testimony of Gruis is sufficient to let a jury decide the issue and the fingerprint is merely added proof.

699 S.W.2d 760, 762 (Mo.App.1985). We have carefully reviewed Gruis's testimony at both trials. His testimony is essentially unchanged. Indeed, at the second trial, he was subject to some additional impeachment on the issue of whether or not he had told police that the taller robber had no beard. Thus, if anything, his testimony may have been less credible at the second trial than at the first.

### A. Effect of *Scott II*

The meaning to be attached to an ambiguous prior reversal is a matter of state law. *See Tibbs v. Florida,* 457 U.S. at 47 n. 24, 102 S.Ct. at 2221 n. 24. The subsequent reinterpretation of a state court opinion by the same court binds this court to the second opinion. *Id.* at 46–47, 102 S.Ct. at 2221. Thus, assuming *Scott I* was ambiguous as to whether a finding of sufficiency had or had not been made, *Scott II*'s resolution is binding.

Under the issues raised, the *Scott I* court was obligated to (and apparently did) make a *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) analysis of the sufficiency of the evidence. The result of this analysis was, at least, ambiguous. The *Scott II* court was also bound by the requirements of *Jackson.* We, although bound by *Jackson,* have not made an independent determination because the petitioner at oral argument expressly stated that the grant or denial of his petition should be determined upon the holding in *Scott I.* Therefore, a determination in *Scott II* that a retrial was proper carries with it the clear implication that it found the evidence at the initial trial sufficient. This, in our view, also makes *Scott II* con-

---

**1.** We believe that the judgment made by the district court was arrived at through an analysis of selected passages of Scott I's discussion of the evidence somewhat out of context. *See, e.g.,* 688 F.Supp. 510, 529 (W.D.Mo.1988). Furthermore, since the sufficiency of Gruis's identification testimony was directly placed before the court in Scott I, *see* text preceding this footnote, we find the conclusion reached untenable.

It is apparent that the district court arrived at its holding, in part, on the erroneous conclusion

that Donald Gruis's testimony at the second trial was the first occasion at which he characterized the certainty of his identification at 90 percent, and alluded to the apple hat. *See* 688 F.Supp. at 516 n. 15. However, Gruis did characterize the percentage of his certainty as "in the nineties." Transcript of first trial at 183. He also said "he [the robber] had an apple hat on." *Id.* at 178. As discussed in Part IV of our opinion, Gruis's testimony at the second trial, was, if anything, less credible than his testimony at the first.

# 1316

clusive on the issue and it was error for the district court to disregard it. *See Tibbs v. Florida,* 457 U.S. at 45 & 46–47, 102 S.Ct. at 2220–21.

## V. ISSUE NOT DECIDED

In determining whether Gruis's testimony, standing alone, was sufficient, we have not attempted to answer the question left open in *Greene v. Massey,* 437 U.S. 19, 26 n. 9, 98 S.Ct. 2151, 2155 n. 9, 57 L.Ed.2d 15 (1978) but answered in *Lockhart v. Nelson,* ___ U.S. ___, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988). This case does not present the question of whether or not the improperly admitted evidence is to be subtracted or included when deciding whether there was sufficient evidence for double jeopardy purposes. *Scott II* found that the Gruis's testimony, standing alone, was sufficient, and since, as indicated, no federal due process claim has been raised, our inquiry is at an end.[2]

## VI. CONCLUSION

Accordingly, the order of the district court is reversed.

**2.** Nonetheless, *Lockhart* appears to fully support the conclusion reached by this panel. There seems to be no doubt that the duct tape evidence coupled with the identification testimony presented a submissible case in which a jury could properly reach a guilty verdict. Thus, the holding of the Supreme Court in *Lock-* *hart*—"where the evidence offered by the State and admitted by the trial court—whether erroneously or not—would have been sufficient to sustain a guilty verdict, the Double Jeopardy Clause does not preclude retrial"—buttresses the result reached in this case. *Lockhart,* ___ U.S. at ___, 109 S.Ct. at 287.