Herbert **HERNANDEZ**, Petitioner,

v.

Richard L. **DUGGER**, Secretary, Department of Corrections, State of Florida, Respondent.

No. 88–287–CIV–T–15A.

United States District Court, M.D. Florida, Tampa Division.

Dec. 8, 1993.

James E. Felman and Stuart C. Markman of Kynes & Markman, Tampa, FL, for petitioner.

Carol M. Dittmar, Atty. General's Office, Tampa Crim. Div., Tampa, FL, for respondent.

## ORDER GRANTING STAY PENDING APPEAL

MERRYDAY, District Judge.

Hernandez's petition for a writ of habeas corpus was conditionally granted and reconsideration was denied. *Hernandez v. Dugger,* 829 F.Supp. 372 (M.D.Fla.1992). The state seeks a stay pending appeal. For the reasons now explained, the stay is **GRANTED.**

*Hilton v. Braunskill,* 481 U.S. 770, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987), addresses discursively the right to manumission of a successful petitioner for the writ of habeas corpus. *Hilton* treats both the presumption favoring release in Rule 23(c), Federal Rules of Appellate Procedure, and the potentially countervailing factors routinely considered by a district court in resolving a motion for a stay in a civil appeal. As stated in *Hilton:*

> Our decisions have consistently recognized that habeas corpus proceedings are civil in nature. *See, e.g., Browder v. Director, Illinois Dept. of Corrections,* 434 U.S. 257, 269, 98 S.Ct. 556, 563, 54 L.Ed.2d 521 (1978). It is therefore logical to conclude that the general standards governing stays of civil judgments should also guide courts when they must decide whether to release a habeas petitioner pending the State's appeal; and such conclusion is quite con-

sistent with the general language contained in Rules 23(c) and (d).

Different rules of procedure govern the power of district courts and courts of appeals to stay an order pending appeal. *See* Fed.Rule Civ.Proc. 62(c); Fed.Rule App. Proc. 8(a). Under both Rules, however, the factors regulating the issuance of a stay are generally the same: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

481 U.S. at 776, 107 S.Ct. at 2119, 95 L.Ed.2d at 732.

With these factors iterated, *Hilton* features both a useful elaboration and a crystallizing presumption or two, all of which inform a district court in helpful detail whether to enlarge a successful habeas corpus petitioner pending resort by the state to the court of appeals.[1]

■ *Hilton* first dismissively regards the notion in *Carter v. Rafferty*, 781 F.2d 993 (3d Cir.1986), that "danger to the public" is an inadmissible consideration. Without deciding that every case is governed by perceived public danger, *Hilton* confirms that the district court's appraisal of evidence portraying the petitioner as a public menace, with either a history of, or a proclivity to commit, iniquitous crimes, is pertinent to a district court's consideration of release. This conforms peaceably with common sense, especially in a case presenting a "structural defect" within the meaning of *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246,

113 L.Ed.2d 302 (1991). For example, in this case, the writ issues because the state trial court refused Hernandez's request to testify. That refusal is a "structural defect," which, in turn, results in issuance of the writ of habeas corpus without the necessity of an evaluation by this court of Hernandez's actual guilt. The writ of habeas corpus in this case issues, as explained in the antecedent orders, not because the federal court finds Hernandez either innocent or guilty, but because no person is subject to criminal conviction in this country absent a fair and reasonable opportunity to testify and to press a claim of innocence to the jury. That aside, the state convicted Hernandez beyond a reasonable doubt of capital sexual offenses, for which he may well be accountable. The evidence was both vivid and ample to sustain the conviction; the evidence, in fact, was compelling.[2] For that reason, an admitted tension exists between the adjudication of guilt and issuance of the writ.

The evidence adduced at trial, considered both qualitatively and quantitatively, impels the mind to the conclusion that Hernandez, his right to testify notwithstanding, bears the evidentiary marks of a threat to the community. Hernandez has suffered a conviction for sexual crimes against children. The evidence at trial, admittedly considered without the benefit of Hernandez's unconstitutionally excluded testimony, is sufficient to justify resolving adversely to Hernandez the issue of whether he poses a threat to the public. *Hilton* states that "if the State establishes that there is a risk that the prisoner will pose a danger to the public if released, the court may take that factor into consideration in determining whether or not to enlarge him." 481 U.S. at 777, 107 S.Ct. at 2120, 95 L.Ed.2d

---

1. *Hilton* actually is an effort at translating into the sphere of criminal law from the sphere of civil law a set of factors that, considered in the terms stated, apply comfortably to stays of money judgments, injunctions, and the like but apply, at best, uncomfortably to proposed release from a penitentiary or from some other form of restricted freedom. *Harris v. Nelson*, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969), cited in *Hilton*, exemplifies the awkward classification of a petition for the writ of habeas corpus as a civil proceeding, which, nonetheless, is definitively what habeas corpus continues to be.

2. The evidence was characterized as "overwhelming" by Magistrate Judge Charles R. Wilson in his "Report and Recommendation," which is attached to this order as an appendix. With the benefit of subsequent and clarifying authority, this court declined to follow the recommendation of the distinguished magistrate judge, but his factual analysis, which is, as always, sound and perceptive, serves as the foundation for this order.

at 733. This court resolves that factor adversely to Hernandez.

■ The next consideration commended by *Hilton* is "the state's interest in continuing custody and rehabilitation ...," a consideration which, stripped of euphemism, equates to whether a convicted, criminal defendant is best left in jail until everyone knows finally what is to happen to him. 481 U.S. at 77, 107 S.Ct. at 2120, 95 L.Ed.2d at 734. Presumably, the district court should evaluate the remaining term of imprisonment over against the state's likelihood of success on appeal. All agree that the remaining term of Hernandez's sentence is formidable—two consecutive terms of life imprisonment. To the extent that Florida is understood by the Supreme Court to enjoy an "interest" in the unserved terms, this factor is resolved adversely to Hernandez. *Hilton* expounds the matter in this way:

> The State's interest in continuing custody and rehabilitation pending a final determination of the case on appeal is also a factor to be considered; it will be strongest where the remaining portion of the sentence to be served is long, and weakest where there is little of the sentence remaining to be served.
>
> The interest of the habeas petitioner in release pending appeal, always substantial, will be strongest where the factors mentioned in the preceding paragraph are weakest. The balance may depend to a large extent upon determination of the State's prospects of success in its appeal. Where the State establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits, continued custody is permissible if the second and fourth factors in the traditional stay analysis militate against release. [cites omitted] Where the State's showing on the merits falls below this level, the preference for release should control.

481 U.S. at 777, 107 S.Ct. at 2120, 95 L.Ed.2d at 734.

The likelihood of success on appeal, a calculation that requires disinterested analysis and frank self-criticism by the district court, seems inevitably to gravitate toward immediate release. The right of a defendant to testify is indigenous to the mechanism of trial by jury as conceived by the citizenry, the lawyers and judges, and those who propounded our constitutional system. The right to testify is within the legitimate expectation of every person who has contemplated our constitutional scheme. Because the right to testify is so basic and so widely assumed and because the court's have issued opinions consistent with that widespread assumption, the Eleventh Circuit Court of Appeals is unlikely to utter an opinion that the right to testify is nonexistent or that the right evaporates irreparably upon the utterance by an attorney (who has no power to waive the right to testify) of the words, "The defense rests."

In *Sullivan v. Louisiana,* —— U.S. ——, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), both Justice Scalia's opinion for the Court and Chief Justice Rehnquist's concurrence reinforce the view that the state is unlikely to prevail on appeal. Justice Scalia notes that:

> In *Fulminante,* we distinguished between, on the one hand, "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards," and, on the other hand, trial errors which occur "during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented." *Fulminante, supra,* 499 U.S. at [286–87, 289–90], 111 S.Ct. at 1252, 1254. Denial of the right to a jury verdict of guilt beyond a reasonable doubt is certainly an error of the former sort, the jury guarantee being a "basic protectio[n]" whose precise effects are unmeasurable, but without which a criminal trial cannot reliably serve its function, *Rose, supra,* 478 U.S. at 577, 106 S.Ct. at 3105. The right to trial by jury reflects, we have said, "a profound judgment about the way in which law should be enforced and justice administered." *Duncan v. Louisiana,* 391 U.S. [145] at 155, 88 S.Ct. [1444] at 1451 [20 L.Ed.2d 491] [(1968)]. The deprivation of that right, with consequences that are necessarily un-

quantifiable and indeterminate, unquestionably qualifies as "structural error."

— U.S. at ——, 113 S.Ct. at 2082–83, 124 L.Ed.2d at 190–91.

The error committed by the judge in Hernandez's trial impinges the integrity of the trial mechanism and serves to deprive the jury of an opportunity to appraise Hernandez's version of the facts. The right of a defendant to contend for his innocence—as well as a defendant's right to a jury, a lawyer, a judge, and a decent explanation of the law by the judge to the jury—comprises the trial mechanism that constitutional principles extend to everyone, whether demonstrably innocent or shamefully guilty.

Writing separately in concurrence, the Chief Justice says much the same thing, although he appears to prefer more precise adherence to the language of *Fulminante* than is contained in Justice Scalia's opinion. Repairing to an analysis of *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), the Chief Justice states that:

> There are many similarities between the instructional error in *Rose* and the one in this case. In the first place, neither error restricted the defendants' "opportunity to put on evidence and make argument to support [their] claim[s] of innocence." 478 U.S. at 579, 106 S.Ct. at 3106–3107. Moreover, "[u]nlike [structural] errors such as judicial bias or denial of counsel, the error[s] ... did not affect the composition of the record." *Id.* at 579, n. 7, 106 S.Ct. at 3107, n. 7. Finally, neither error removed an element of the offense from the jury's consideration, *id.* at 580, n. 8, 106 S.Ct. at 3107, n. 8, or prevented the jury from considering certain evidence.

— U.S. at ——, 113 S.Ct. at 2084, 124 L.Ed.2d at 192. Obviously, in Hernandez's trial, the trial judge's error (1) restricted the defendant's opportunity to elicit evidence and argue to the jury the content of the excluded evidence, (2) adversely affected the composition of the record, and (3) prevented the jury from evaluating "certain evidence," which is a phrase that understates acutely the potential force of the words spoken and the appearance presented by a defendant who waives his right to remain silent, subjects himself to an oath, and assumes the witness stand.

Returning to the case at hand, the court resolves in favor of Hernandez the issue of probability of success on appeal. The state's presentation at the hearing on the motion for reconsideration and again at the hearing on the motion for a stay has included noticeably little with respect to the prospects for appellate success by the state. In a case in which the state admits constitutional error, perhaps the state's decision to discuss other matters is understandable.[3]

▪ Assuming the state has failed to establish a probability of success on appeal, the final factor mentioned in *Hilton* is whether the state has a "substantial case on the merits." Although *Hilton* fails to specify whether this "substantial case" is the appeal (i.e., whether the appellate position of the appellee is substantial even if not probably successful) or the prospective retrial (or, when applicable, the original trial), a discriminating evaluation of *Hilton* and related cases results in the view that the "substantial case" to which *Hilton* alludes is the appeal. Given the occasional difficulty of asking a district judge to publicly state that his or her order is probably reversible, the appellate courts seem content, for the purposes of entry of a stay, to inquire whether the district court regards the appellee's position as "substantial." Assuming this interpretation of *Hilton* is correct, this court cannot say that the state's position lacks substance. Similarly, if this interpretation of *Hilton* is wrong and the "merits" are those of either the original trial or the prospective retrial, this court cannot say that the state's position lacks substance. Considering the presently available evidence (i.e., the evidence without Hernandez's unconstitutionally excluded testimony), the state's trial court position on the "merits" is distinctly strong. In either event, with some variance in the degree of certainty, the issue of whether the state has a "substantial" position on the merits is resolved adversely to Hernandez. The state has a plausible appel-

---

**3.** At the hearing on the motion for a stay, the defense interposed several objections and motions to strike. To the extent those were denied or a ruling deferred, this court's decision is reached without consideration of any of the challenged testimony.

late position and a commanding evidentiary position with respect to the issue of guilt (excluding, of course, any consideration of the effect of the passage of time on the capacity of the state to marshal both the witnesses and the tangible evidence necessary to convict).[4]

The four factors so often invoked by courts in deciding whether to issue stays contemplate some, but not necessarily all, of the pertinent information available to a district court. Some of the human factors simply defy description, which in part explains the deference shown by appellate courts to the trial courts in cases such as this. For example, Hernandez has served eight years' imprisonment for a conviction that this court finds is the result of an unconstitutional denial of his right to testify. Additionally, his son is willing to encumber the son's home as collateral to ensure Hernandez's appearance at subsequent proceedings. On the other hand, the record includes evidence of guilt that repulses the senses. The factors that cross the mind of a judge, a lawyer, a parent, or anyone else in a case of this nature are too numerous to describe. But, everything said and done, even if the judicially approved factors are inconclusive or incomplete, some decision must result.[5]

After prolonged consideration of all that has been tendered by the state and by Hernandez, this court resolves to stay the order granting the writ of habeas corpus and to require Hernandez to remain incarcerated pending appeal.

## APPENDIX

### REPORT AND RECOMMENDATION

CHARLES R. WILSON, United States Magistrate Judge.

THIS CAUSE came on for consideration of a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, filed by a state prisoner, Herbert Hernandez. On September 16, 1986, Hernandez was convicted by a jury in the Circuit Court for the Sixth Judicial Circuit of Florida on two counts of sexual battery upon a child under 12 years of age. He was sentenced to two life sentences with a 25–year minimum mandatory, to run concurrent. He has exhausted all state court remedies. In this petition, he alleges that his convictions should be vacated for the reason that the trial court violated his right to testify on his own behalf at the trial in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

---

**4.** *Martin v. Solem,* 801 F.2d 324 (8th Cir.1986), suggests that the issue governing release is influenced by the "case on the facts," which necessarily alludes to the state of the evidence as viewed by a judge or jury during trial. *Martin* states that:

> "In spite of the lack of specific statutory authorization, it is within the inherent power of a District Court of the United States to enlarge a state prisoner on bond pending hearing and decision on his [or her] application for writ of habeas corpus." *In re Wainwright,* 518 F.2d 173, 174 (5th Cir.1975) (per curiam) (petition for rehearing) (citations omitted). Release on bail pending disposition of the habeas petition, or pending appeal, requires the habeas petitioner to show not only a substantial federal constitutional claim that "presents not merely a clear case on the law, but a clear, and readily evident, case on the facts," *Glynn v. Donnelly,* 470 F.2d 95, 98 (1st Cir.1972) (citation omitted), but also the existence of "some circumstance making [the request] exceptional and deserving of special treatment in the interests of justice." *Aronson v. May,* 85 S.Ct. [3] at 5[, 13 L.Ed.2d 6 (1964)]. *See, e.g., Iuteri v. Nardoza,* 662 F.2d [159] at 161 [(2d Cir.1981)];

*Ostrer v. United States,* 584 F.2d 594, 599 (2d Cir.1978). Habeas petitioners are rarely granted release on bail pending disposition or pending appeal. *See Johnston v. Marsh,* 227 F.2d 528, 529 (3d Cir.1955) (medical emergency); *cf. Boyer v. City of Orlando,* 402 F.2d 966, 967–68 (5th Cir.1968) (extraordinary attempt to accommodate exhaustion of available state remedies with petitioner's clear meritorious constitutional claim).

801 F.2d at 329. The "case on the facts" is a useful refinement of the phrase "the case on the merits." The resulting analysis is that, even in a case presenting a "structural defect" as defined in *Fulminante,* an evidentiary evaluation, that is, an evaluation of the "case on the facts," contributes heavily to the issue of release pending appeal.

**5.** In *Scott v. Jones,* 688 F.Supp. 510 (W.D.Mo. 1988), *rev'd on other grounds,* 862 F.2d 1311, *cert. denied,* 490 U.S. 1111, 109 S.Ct. 3169, 104 L.Ed.2d 1031 (1989), the issue of release is expressed in terms of seven factors. In this case, restating four factors as seven factors produces no different result, although the discussion at 688 F.Supp. at 537 suggests strongly that "the merits" means the strength of the appeal.

For the reasons that follow, I recommend that the petition be denied.

At the trial, the prosecution introduced testimony from the victim, Linda Ann Walker, who implicated Hernandez. She testified that she walked to Hernandez' barbershop on December 24, 1985 looking for a friend. Hernandez took her to the back of the shop to a pool table where the sexual battery took place. Hernandez then gave Walker three dollars, one for her and one for her two cousins for Christmas. The same incident took place on Christmas Day, the next day. Walker's aunt, Marie Martin, also testified at the trial and corroborated Walker's testimony as related to her by Walker. The same story was related to the investigating officers in the case by Walker. When the investigating officers questioned Hernandez about the allegations, they purposely failed to identify the particular victim. When Hernandez denied the allegations, he identified the victim by physical description and was thereupon arrested for the crimes. The medical doctor who examined Walker at an assault victim examination center testified that Walker's accusations were consistent with his physical observations and examination. Additionally, the state presented testimony of three other minors who had performed odd jobs at Hernandez' barbershop. All three testified that they were subjected to sexual molestation by Hernandez on prior occasions. Hernandez called two witnesses: the victim, Linda Ann Walker, for the purpose of establishing that he owed her no money; and Glenn Louis Rossa, a former police officer and barber who had previously worked for Hernandez. Rossa testified that the young people who frequented the barbershop for odd-job employment returned there even after he was arrested. The defense rested and a lunch recess was taken. An instruction conference took place after the recess. Just prior to closing argument, Hernandez informed his trial counsel that he had changed his mind about not testifying and wished to take the stand and deny the allegations against him, against his attorney's advice. The trial court refused to allow Petitioner to testify[1] stating:

> The defense has rested. The state's case has, for all intensive (sic) purposes with regard to the guilt phase of the defendant, been terminated since last Friday. There is nothing newly discovered. There is nothing newly available. We have been at rest now since 11:25 a.m. We have now completed our instruction conference and the court feels that the request—absent a showing of cause which would presume prejudice—is simply untimely; therefore, I am going to deny the defendant's request to reopen for the purpose of defendant's testimony.

The central consideration, therefore, is whether the trial court's denial of Hernandez' right to testify is an error of such constitutional magnitude as to warrant a vacation of his convictions and sentences by federal habeas corpus relief.

A defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense. *Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). The right to testify on one's own behalf at a criminal trial is one of the rights that are " 'essential to due process of law in a fair adversary process.' " *Id.*, 483 U.S. at 51, 107 S.Ct. at 2709, quoting *Faretta v. California*, 422 U.S. 806, 819, n. 15, 95 S.Ct. 2525, 2533, n. 15, 45 L.Ed.2d 562, 572, n. 15 (1975). This right has its sources in the due process clause of the Fourteenth Amendment, the compulsory process clause of the Sixth Amendment, and the Fifth Amendment privilege against self-incrimination. *Rock v. Arkansas, supra.* The right may, however, in appropriate cases, " 'bow to accommodate other legitimate interests in the criminal trial process.' " *Id.*, 483 U.S. at 55, 107 S.Ct. at 2711, quoting *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297, 309 (1973). Restrictions on a defendant's right to testify, however, "may not be arbitrary or disproportionate to the pur-

---

1. Section 90.612, Florida Evidence Code, states: (1) the judge shall exercise reasonable control over the mode and order of the interrogation of witnesses and the presentation of evidence, so as to: (a) facilitate, through effective interrogation and presentation, the discovery of the truth; (b) avoid needless consumption of time; (c) protect witnesses from harassment or undue embarrassment.

poses they are designed to serve. In applying its evidentiary rules the state must evaluate whether the interest served by a rule justifies the limitations imposed on the defendant's constitutional right to testify." *Rock v. Arkansas, supra,* 483 U.S. at 56, 107 S.Ct. at 2711.

A federal constitutional error is not automatically reversible. *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436–37, 89 L.Ed.2d 674 (1986). The context of the case will indicate whether the error is harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). *Ortega v. O'Leary,* 843 F.2d 258, 262 (7th Cir.1988).

. In the present case, the trial court made no specific finding as to whether Hernandez had, in fact, waived his constitutional right to testify in his own behalf. Other circuits that have considered the issue have held that the right to testify can be waived. *Ortega v. O'Leary, supra. United States v. Johnson,* 820 F.2d 1065 (9th Cir.1987). The Supreme Court has held that when there is uncertainty as to whether fundamental constitutional rights have been waived, the court must indulge every presumption against waiver. *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Courts should carefully consider a defendant's request to exercise his or her constitutional rights, particularly the right to testify. *United States v. Walker,* 772 F.2d 1172 (5th Cir.1985).

Hernandez did not waive his right to testify and his request to have his case reopened for the purpose of exercising his constitutional right to testify should have been granted. His request came after he rested his case. There was no rebuttal by the prosecution. Nothing whatsoever was presented to the jury between the announcement by his counsel that the defense rested and his subsequent request to reopen his case to testify. The charge conference took place outside of the presence of the jury. The exercise of Hernandez' fundamental constitutional right to testify should have prevailed over the trial court's concern over the needless consumption of time and concern about a lack of "newly discovered" evidence. Nonetheless, the trial court's error must be examined in light of the *Chapman* standard. *Delaware v. Van Arsdall, supra,* establishes the framework for determining whether an error is harmless beyond a reasonable doubt under *Chapman:*

> [The] factors [to consider] include the importance of the witness' testimony to the ... case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points ... and, of course, the overall strength of the ... case.

*Id.,* 475 U.S. at 684, 106 S.Ct. at 1438, 89 L.Ed.2d at 686–87.

Hernandez submitted an affidavit reflecting what his testimony would have been were he allowed to testify at the trial (doc. 24). He indicates in his affidavit that he would have testified about why the prosecution's witnesses didn't like him, and how they had a motive to lie about him. This relationship, however, was brought forth by Hernandez' attorney on cross-examination, and his counsel appeared to successfully cast some doubt on their credibility. Therefore, Hernandez' testimony in that regard would have been cumulative at best. Other facts offered by Hernandez in his petition essentially amount to a denial of the testimony of the victim, Linda Ann Walker, and offer instances of bias that were also sufficiently brought forth by his counsel's cross-examination. More importantly, the evidence against Hernandez was overwhelming. Hernandez was identified by the victim, and her story remained consistent. Her testimony was corroborated by her aunt, two police officers, and physical and medical evidence. Three other children of her age testified that they experienced sexual advances by Hernandez. Further, Hernandez made incriminating statements prior to his arrest. Respondent also asserts that Hernandez' prior felony criminal record would have been exposed to the jury had he testified. Hernandez offers no new evidence of significance that can reasonably be considered to be sufficient to make a difference in his trial. Consequently, the absence of Hernandez' testimony did not deprive him of a fair trial since the error was harmless under

the standard of *Chapman v. California, supra.*

Accordingly, I recommend that the petition for writ of habeas corpus be denied, with prejudice.

October 18th, 1990.

NOTE: Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1). Local Rule 6.02: *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir.1982) (en banc).