George Thomas FRANKLIN, Petitioner,

v.

William DUNCAN, Warden, Respondent.

No. C–94–1430 DLJ.

United States District Court, N.D. California.

June 15, 1995.

Dennis P. Riordan, Riordan & Rosenthal, San Francisco, CA, for petitioner.

Deputy Atty. Gen. Bruce Ortega, San Francisco, CA, for respondent.

## ORDER

JENSEN, District Judge.

On May 3, 1995, the Court heard arguments on respondent's ("the State's") motion for a stay pending appeal and petitioner George Thomas Franklin's motion for release pending appeal. Dennis P. Riordan of Riordan & Rosenthal appeared on behalf of petitioner. Deputy Attorney General Bruce Ortega appeared on behalf of respondent. Having considered the arguments of counsel, the papers submitted, the applicable law, and the entire record herein, the Court GRANTS a stay pending appeal. During the pendency of appeal, however, the Court ORDERS Franklin released upon his posting surety in the amount of $1,000,000 and agreeing to follow the Court's conditions of release.

## I. BACKGROUND

On April 4, 1995, this Court issued an order granting Franklin's petition for a writ of habeas corpus, and ordering his retrial or release within 90 days. The Court held that three federal constitutional violations had a substantial and injurious effect on the jury's verdict, and that therefore the verdict was the product of a trial that was not fundamentally fair. The state has now filed a notice of appeal and seeks a stay of the Court's order to permit Ninth Circuit review. Pursuant to Federal Rule of Appellate Procedure 23(c), petitioner moves for release on his own recognizance or on a signature bond during the pendency of appeal.

## II. DISCUSSION

A. *Legal Standard*

■ Federal Rule of Appellate Procedure 23(c) provides that

Pending review of a decision ordering the release of a prisoner in such a [habeas corpus] proceeding, the prisoner shall be enlarged upon the prisoner's recognizance, with or without surety, unless the court or justice or judge rendering the decision, or the court of appeals or the Supreme court, or a judge or justice of either court shall otherwise order.[1]

The district court retains jurisdiction to issue orders regarding the custody or enlargement of a petitioner even after an appeal has been taken from the order granting or denying habeas corpus relief. *Workman v. Tate,* 958 F.2d 164, 167 (6th Cir.1992). Rule 23(c) specifically refers the decision whether to release a successful habeas petitioner pending appeal to either the district court granting the petition, the court of appeals, or the Supreme Court.

■ As the State concedes, Rule 23(c) creates a presumption of release from custody. That presumption, however, may be overcome if the judge rendering the decision "otherwise orders." *Hilton v. Braunskill,* 481 U.S. 770, 774, 107 S.Ct. 2113, 2118, 95 L.Ed.2d 724 (1987) (quoting Rule 23(c)). The Supreme Court has indicated that a district court has broad discretion in conditioning a judgment granting habeas relief, including whether or not to release the prisoner pending appeal. *Id.* at 775, 107 S.Ct. at 2118. Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters "as law and justice require."

■ In *Hilton,* the Supreme Court sets forth the factors for a district court to consider in determining whether or not to stay its decision or release a successful habeas petitioner pending appeal. The Court portrays the questions whether to stay the decision granting habeas corpus and whether to release the prisoner pending appeal as mirror images of each other. *See id.* at 775–76, 107 S.Ct. at 2118–19. ("[A] court's denial of enlargement to a successful habeas petitioner

---

**1.** Federal Rule of Appellate Procedure 23(d) creates a "presumption of correctness for the order of a district court entered pursuant to Rule 23(c), whether that order enlarges the petitioner or refuses to enlarge him," although this presump-
tion may be overcome in the appellate court "for special reasons shown." *Hilton v. Braunskill,* 481 U.S. 770, 774, 107 S.Ct. 2113, 2118, 95 L.Ed.2d 724 (1987) (quoting Rule 23(d)).

pending review of the order granting habeas relief has the same effect as the court's issuance of a stay of that order.").[2] Accordingly, the Court concludes that the general standards governing stays of civil judgments, as well as the language of Rule 23(c) itself, should guide courts when they must decide whether to release a habeas petitioner pending the State's appeal. *Id.* at 776–77, 107 S.Ct. at 2119. These factors are (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Id.* at 776, 107 S.Ct. at 2119.[3]

As part of this analysis, the Supreme Court has indicated that it is appropriate to consider danger to the public, risk of flight, and the state's interest in continuing custody and rehabilitation in determining whether to release a successful habeas petitioner pending appeal. *Id.* at 777, 107 S.Ct. at 2120.[4]

B. *Analysis*

1. *Likelihood of Success on the Merits*

■ In *Hilton,* the Supreme Court said that a determination of the State's prospects of success in its appeal is an important factor in analyzing whether to grant a stay and whether to release a prisoner pending appeal. The Court explained,

> Where the State establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits,

continued custody is permissible if the second and fourth factors in the traditional stay analysis militate against release.

*Id.* at 778, 107 S.Ct. at 2120.

As one district court has described it, "The likelihood of success on appeal, a calculation that requires disinterested analysis and frank self-criticism by the district court, seems inevitably to gravitate toward immediate release." *Hernandez v. Dugger,* 839 F.Supp. 849, 852 (M.D.Fla.1993). This Court does not believe that the State has established a strong likelihood of success on appeal. As discussed in the Court's April 4, 1995 Order, the State violated the sixth amendment by its involvement in Eileen Franklin–Lipsker's jailhouse visit to her father in the absence of counsel, then compounded that error by introducing evidence of petitioner's silence in the face of Franklin–Lipsker's accusations in violation of the fifth amendment. Moreover, the trial court improperly denied the defense the ability to introduce evidence that the specifics of Franklin–Lipsker's trial testimony had been reported in the public media before her testimony, in violation of the due process clause and confrontation clause. In light of these violations and the substantial effect they had on the jury's verdict, the State's likelihood of success on appeal is not great.

■ Assuming the state has failed to establish a probability of success on appeal, the alternative factor mentioned in *Hilton* is whether the state has a "substantial case on the merits." The state's position that no fifth amendment violation occurred from the

---

**2.** The parties' papers portray the relationship between a stay and release somewhat differently. For instance, petitioner says that if the State would agree to his release, he would agree to a stay of the Court's order. By contrast, the *Hilton* Court seems to suggest that by releasing an inmate pending appeal, the district court is therefore *denying* a stay. The choice of language is not of substantive import, but the Court points it out to avoid any unnecessary confusion. For purposes of this Order, the Court will use "stay" to refer to staying the Court's order that the State retry Franklin within 90 days or lose its opportunity to do so.

**3.** One district court has described *Hilton* as follows:

> *Hilton* actually is an effort at translating into the sphere of criminal law from the sphere of civil law a set of factors that, considered in the terms stated, apply comfortably to stays of money judgments, injunctions, and the like but apply, at best, uncomfortably to proposed release from a penitentiary or from some other form of restricted freedom.

*Hernandez v. Dugger,* 839 F.Supp. 849, 850 n. 1 (M.D.Fla.1993).

**4.** Although the *Hilton* Court does not specify, it appears that danger to the public, risk of flight, and the state's interest in continuing custody and rehabilitation are appropriately considered as part of the second and fourth equitable factors.

introduction of evidence of petitioner's post-*Miranda* silence, the prosecution's extensive comment on that silence at trial, and the trial court's instruction that the jury could consider the evidence as indicative as guilt is not persuasive. The three California court of appeal judges, as well as this Court, found that a fifth amendment violation had occurred. This Court, as well as the state court of appeal, held that the fifth amendment can be violated by the prosecution's commenting on a defendant's silence in the face of questioning, whether the questioning is from a private party or a government official. The State, in its Answer, conceded that this was the law, and noted that it could find no cases to the contrary. Thus, it is surprising that the State newly claims that this is a "new rule" which cannot be announced on habeas corpus under *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

The State also argues that even if there was a fifth amendment violation, the error was harmless. Although this Court found that the extensive comment on petitioner's silence had a "substantial and injurious effect" on the jury's verdict, the state court of appeal held otherwise. Simply the fact that the state court disagreed cannot itself be enough to satisfy this factor, however, because in every federal habeas case the state court will have disagreed. In light of the Ninth Circuit's decision in *United States v. Kallin,* 50 F.3d 689 (9th Cir.1995) (emphasizing the nature and degree of prejudice created by the prosecution's unconstitutional use of a defendant's right to remain silent), the fact that petitioner's silence was emphasized in closing argument and stressed to the jury, *see id.* at 1987; *United States v. Baker,* 999 F.2d 412, 416 (9th Cir.1993), and the fact that the trial court instructed the jury that they could consider petitioner's silence as evidence of his guilt, the State's likelihood of success on this argument is slight.

In its April 4, 1995 Order, the Court noted that whether or not there was a sixth amendment violation was a closer question. The State told Eileen Franklin–Lipsker that her plan to obtain a confession from her father was "not a bad idea," made special arrangements for her to meet with her father during non-visiting hours, and met with her just prior to the visit. By these actions, the Court found that the State was impermissibly involved in Franklin–Lipsker's questioning of petitioner.

The State's position that the trial court's refusal to permit the defense to introduce evidence that the details of Franklin–Lipsker's testimony were available in the public domain did not violate the due process clause or confrontation clause is difficult to square with cases indicating that a defendant has a constitutional right to present *all* relevant evidence of significant probative value to the defense. *See Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967); *Pennsylvania v. Ritchie,* 480 U.S. 39, 56, 107 S.Ct. 989, 1000, 94 L.Ed.2d 40 (1987); *Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973); *United States v. Begay,* 937 F.2d 515 (10th Cir.1991). Thus, the Court does not foresee a reasonable possibility of success on the merits on this claim.

Overall, the Court finds the state has a plausible appellate position as to the sixth amendment violation, but does not have a plausible appellate position as to the fifth amendment or due process/confrontation clause violations. As habeas corpus is warranted on any of these violations in and of itself, the Court cannot find that the State has a "substantial case on the merits."

2. *Whether the State Will Be Irreparably Injured Absent a Stay and by Franklin's Release*

■ It appears that the State would be irreparably injured absent a stay of the requirement that the State retry petitioner within 90 days. It is highly unlikely that the Ninth Circuit will hear the State's appeal and issue an opinion within the 90 days from April 4, 1995 that this Court set for retrial. It makes little sense for the State to be required to immediately conduct a murder trial if there is any possibility the trial could be mooted by a reversal of this Court's order on appeal.

As to possible injury to the state should Franklin be released pending appeal, "the

State's interest in continuing custody and rehabilitation" pending a final determination of the case on appeal is an appropriate factor to consider. *Hilton,* 481 U.S. at 777, 107 S.Ct. at 2119. Where, as here, petitioner has a life sentence and the remaining portion of the sentence to be served is long, this factor weighs against release. *Id.*

### 3. *Whether Issuance of a Stay and Denial of Release Will Substantially Injure the Other Party*

■ There is little reason to believe that issuance of a stay of retrial will substantially injure Franklin. It will simply provide the State the opportunity to appeal without either side being forced to go through another trial in the meantime.

■ On the other hand, there is every reason to believe that denying Franklin release pending appeal *will* substantially injure him. This Court has invalidated Franklin's conviction as unconstitutionally obtained. Franklin has been imprisoned these past four years under an unconstitutional conviction. Although there is of course the possibility the Ninth Circuit will hold otherwise, at this point in time Franklin is being imprisoned subject to a conviction held invalid. The State has not sought an expedited appeal, and a long delay in the appellate process would weigh in favor of release. *See Harrison v. Ryan,* 1990 WL 45740, 1990 U.S.Dist. LEXIS 4302 (E.D.Pa. April 12, 1990) ("The court does not believe that the burden imposed by delay should fall on the petitioner, who was found by this court to be improperly convicted.") Under these circumstances, Franklin has a strong interest in release.

### 4. *Where the Public Interest Lies*

■ The public interest favors a stay of retrial in that a possibly unnecessary retrial, with two verdicts, could contribute to a burden on the participants in the trial and a lack of public confidence in the judicial system.

Whether the public interest defeats the presumption in favor of release pending appeal is a closer question. *Hilton* indicates that risk of flight and danger to the community are relevant factors for the district court to consider as part of this analysis.

The State claims that Franklin poses a risk of flight. Murder is an extremely serious charge which by its nature would seem to pose a heightened risk of flight. The State, however, has presented no evidence that Franklin poses a particularized flight risk if sufficient surety is set. Franklin is fifty years old, has no prior criminal record, has lived most of his life in the Bay Area and Sacramento, and has a lifetime of public service as a San Mateo County fire fighter and member of the United States Marine Corp Reserve.

On the other hand, the proposal for Franklin's release on bail submitted by Franklin's counsel does not sufficiently ensure that Franklin will not flee the Court's jurisdiction during the pendency of the appeal. Counsel has suggested that the Court release petitioner upon condition that his brother-in-law, Gerald Dantzler, sign a signature bond to secure petitioner's release, using his home, with equity of $75,000, to secure such a bond. Counsel also suggests that petitioner be permitted to reside with his brother and sister-in-law in University City, Texas during the pendency of appeal.

Finally, the State claims that Franklin poses a danger to the community. This Court has issued a writ of habeas corpus, not because the Court finds Franklin either innocent or guilty, but because grave constitutional errors occurred which render Franklin's convictions unreliable. Thus, in terms of danger, Franklin may be viewed analogously to a pretrial detainee charged with murder. As a pretrial detainee charged with murder, the state court previously set bail for Franklin in the amount of $2,000,000.

In terms of an appraisal of Franklin's danger to the community, the evidence is mixed. The offense underlying his conviction occurred in 1969 and there have been no charges against him since that time nearly thirty years ago. Other than Vehicle Code related offenses, Franklin has no prior arrests or convictions.

On the other hand, the State notes that the trial court permitted the prosecution to intro-

duce as part of its case-in-chief extensive testimony from members of petitioner's family about acts of physical and emotional abuse he inflicted upon them. Petitioner's daughter Eileen Franklin–Lipsker, and his former wife Leah Franklin, testified at trial that petitioner abused Franklin–Lipsker and her siblings throughout their childhood. Although this is of concern to the Court, that testimony of abuse related to events happening over 20 years ago; it is therefore less relevant to an evaluation of Franklin's current danger than it would otherwise be.

The State also notes that the trial court excluded a plethora of evidence suggesting that petitioner has led a life wherein he has expressed sexual fascination in children. The State contends that such evidence is relevant to this Court's consideration of Franklin's danger to the community. *See* Exhibit B to Respondent's Answer to Order to Show Cause, at 756–90.

This showing raises an issue as to petitioner's potential risk of danger to the community. Nonetheless, by application of the analytic framework for pretrial detention, the Court believes that there is a "combination of conditions [that] will reasonably assure the appearance of [petitioner] as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). In order to ensure the safety to the community and guard against a risk of flight, however, these conditions must be strict.

Therefore, the Court will order petitioner released, but only upon his posting a bond in the amount of $1,000,000 and agreeing to reside in the Northern District of California and obey the Court's orders relating to travel, conduct, and reporting during the pendency of appeal. Douglas Horngrad, Franklin's trial lawyer, has submitted a declaration stating that he would assist Franklin in returning to the Bay Area, would provide him transitional housing here, and would help him find permanent housing in the Bay Area. Although Franklin's sister and brother-in-law are willing to have Franklin reside with them at their home in Texas, the Court is unwilling to have Franklin reside outside this district during the pendency of appeal.

## III. CONCLUSION

The Court hereby GRANTS respondent's motion for a stay of its Order to the following extent. The State need not retry Franklin during the pendency of appeal of this Court's April 4, 1995 Order. If the appeal is unsuccessful, the State shall have 90 days from the date the appellate decision is final to institute trial proceedings in the State court.

Given the availability of a combination of circumstances that can serve to assure appearance and public safety in this case, it appears to the Court that the balance of equities does not weigh against upsetting Rule 23(c)'s presumption in favor of petitioner's release. Accordingly, the Court ORDERS Franklin released during the pendency of appeal, upon the condition that he post a bond in the amount of $1,000,000 and agree to follow the conditions of release to be set by this Court. At such time as Franklin is able to secure an adequate bond, his counsel should contact the Court's deputy clerk to schedule a session with the Court during which Franklin will sign an agreement setting forth the conditions of his release.

IT IS SO ORDERED.